S03G1782. FORTNER et al. v. TOWN OF REGISTER.
S03G1788. FORTNER et al. v. OGEECHEE RAILWAY.
(604 SE2d 175)

CARLEY, Justice.

Leon Fortner was killed when a train operated by Ogeechee Railway collided with his tractor-trailer at a railroad crossing in the Town of Register. His widow, Sheila Fortner, brought suit individually, as administratrix of his estate, and as guardian of their minor child, against the Railway and the Town (Appellees), alleging, among other claims, that they failed to keep the railroad right-of-way free of visual obstructions caused by overgrown vegetation planted by the Town. After Appellees moved for summary judgment, the trial court denied the motions as to this claim, although it granted summary judgment with respect to the other claims. The trial court found that there were genuine issues of material fact as to whether Appellees had violated OCGA § 32-6-51 (b) (3):

> It shall be unlawful for any person to erect, place, or maintain in a place or position visible from any public road any unauthorized sign, signal, device, or other structure which ... [o]bstructs a clear view from any public road to any other portion of such public road, to intersecting or adjoining public roads, or to property abutting such public road in such a manner as to constitute a hazard to traffic on such roads . . . .

On interlocutory appeal, the Court of Appeals reversed, holding in part that the allegedly vision-obstructing vegetation was not "unauthorized" under OCGA § 32-6-51 (b) (3) because there was no evidence that it was planted or maintained in violation of any statute, code, or local ordinance, and that the Georgia Code of Public Transportation (GCPT), of which OCGA § 32-6-51 is one section, precludes a common law action. *Town of Register v. Fortner*, 262 Ga. App. 507 (586 SE2d 54) (2003). This Court granted certiorari to review these rulings and, unless both of them are correct, the judgment of the Court of Appeals must be reversed. We now conclude that neither the GCPT in general,

nor OCGA § 32-6-51 (b) (3) in particular, preempts the common law and that, for purposes of that statute, vegetation or other structures are "unauthorized" when there is an absence of any governmental authorization for them. Accordingly, genuine issues of material fact remain with respect to two separate, independent duties, one arising from the common law and the other statutory. Therefore, we reverse the judgment of the Court of Appeals and remand the case for consideration of remaining enumerations of error.

1. The common-law rules are still of force and effect in this State, except where they have "been changed by express statutory enactment or by necessary implication. [Cits.]" *Robeson v. Intl. Indemnity Co.*, 248 Ga. 306, 307 (1) (282 SE2d 896) (1981). Nothing in the GCPT expressly preempts the common law. Instead, the GCPT was enacted to change prior statutory law "to revise, classify, consolidate, and repeal Title 95, Code of Georgia of 1933 . . . and other laws relating to all public roads, bridges and ferries and other modes of transportation in the State." Ga. L. 1973, p. 947. See also *Kitchen v. CSX Transp.*, 265 Ga. 206, 207 (1) (453 SE2d 712) (1995); Ga. L. 1973, pp. 947, 1174, § 2 (specific repealer of numerous code sections).

In dicta in *Kitchen*, supra at 208 (1), fn. 6, this Court suggested that governmental bodies have the exclusive duty to install and maintain traffic control devices on public roads, including railroad crossings, and that OCGA § 32-6-51 (a) prohibits "private entities, including railroads, from placing traffic control devices on the public roads." To the contrary, state and local governments can require railroads to install protective devices, and railroads must maintain all such devices. OCGA § 32-6-200 (a), (b) (3). Our actual holding in *Kitchen*, supra at 208 (1), was that, pursuant to OCGA § 32-6-197 (b), the GCPT obliged the governmental body, but not the railroad, to maintain a public road and any warning devices thereon leading to a bridge over railroad tracks. More importantly, we did not conclude that that statute preempted the common law, but rather we assumed that a common-law duty of care survived the GCPT. *Kitchen*, supra at 209 (2).

A few years later, the Court of Appeals held that OCGA § 32-6-200 preempted the common-law duty of railroads to initiate and authorize the installation of protective devices at grade crossings on public roads. *Evans Timber Co. v. Central of Ga. R. Co.*, 239 Ga. App. 262 (1) (519 SE2d 706) (1999). In its opinion, the Court of Appeals erroneously relied on the dicta in *Kitchen*. *Evans Timber*, supra at 263-264 (1). To the extent that the holding of *Evans Timber* is based on that dicta, it is overruled.

Assuming that, under OCGA § 32-6-200, railroads no longer have any duty to initiate the installation of protective devices at

grade crossings, it does not follow that the entirely different provisions of OCGA § 32-6-51 (b) (3) preempt the common law in any respect. *Evans Timber*, supra at 265, 267 (1), itself recognized that other common-law duties would remain in effect, including the duty to maintain protective devices and the duty not to obstruct vision at a crossing. The essence of *Evans Timber* is that OCGA § 32-6-200 affirmatively re-delegates the authority of a railroad to initiate certain curative action for a potentially unsafe condition. OCGA § 32-6-51 (b) (3), on the other hand, simply prohibits the creation or maintenance of a particular hazardous condition. Furthermore, contrary to the apparent misunderstanding by the dissent, this prohibition explicitly applies to "any person." OCGA § 32-6-51 (b). Such a statutory provision may constitute an expansion or codification of previous common-law duties regarding unsafe conditions, but it certainly does not contradict those duties or place them "exclusively on governmental entities." Dissenting opinion, p. 630. Therefore, OCGA § 32-6-51 (b) (3) cannot possibly carry a necessary implication that the General Assembly has changed the common law. To the extent that the common law imposed the duty to prevent vegetation from obstructing vision at a railroad crossing, that duty remains in effect. See *Atlanta & West Point R. Co.*, 54 Ga. App. 666, 667 (1) (188 SE 915) (1936); *Central of Ga. R. Co. v. Barnes*, 46 Ga. App. 158 (1) (167 SE 217) (1932); Anno., 66 ALR4th 885 (1988).

2. We now consider the extent of the statutory duty set forth in OCGA § 32-6-51 (b) (3) and initially observe that, because this statute plainly is not in derogation of the common law, the rule of strict construction does not apply. Furthermore, legislation "intended to promote the public safety should receive a reasonable and practical interpretation to that end. [Cit.]" *Northwestern Mutual Life Ins. Co. v. McGivern*, 132 Ga. App. 297, 300 (1) (208 SE2d 258) (1974).

OCGA § 32-6-51 (b) prohibits the placement or maintenance of certain "structure[s]." Citing prior cases, the Court of Appeals stated that the language of the statute includes trees and other vegetation. *Town of Register*, supra at 507 (1). *United Refrigerated Svcs. v. Emmer*, 218 Ga. App. 865, 866 (1) (463 SE2d 535) (1995), held that OCGA § 32-6-51 (b) (3) applied to an allegedly vision-obstructing row of trees planted by the defendant. See also *Howard v. Gourmet Concepts Intl.*, 242 Ga. App. 521, 522 (1) (a) (529 SE2d 406) (2000) (applying OCGA § 32-6-51 to "planted trees, shrubbery, and vegetation"). Where vegetation is purposely planted, whether for landscaping or some other function, it may constitute a "structure" as used in statutory language. *Wilson v. Handley*, 119 Cal. Rptr. 2d 263, 267 (I) (Cal. App. 2002). The record here contains evidence that vision-obstructing vegetation was planted as part of the construction of a municipal park. Under OCGA § 32-6-51 (b) (3), the maintenance of

such an obstruction constitutes negligence when it creates a traffic hazard and is unauthorized. *Town of Register*, supra. The Court of Appeals correctly ruled that a railroad right-of-way, other than a grade crossing, constitutes private property and, thus, an obstruction thereon is not per se unauthorized. *Town of Register*, supra at 508 (1), 510 (2), 512 (on motion for reconsideration). See also OCGA §§ 32-1-3 (24), 32-6-1.

However, the Court of Appeals also held that the visual obstruction here was not otherwise "unauthorized," having previously defined this term as " 'in violation of some statute, code, or local ordinance.' [Cits.]" *Town of Register*, supra at 508 (1). This definition requires that there be some legislative prohibition of the particular structure involved. Ordinarily, however, the word "unauthorized" is more broadly defined as "not authorized" or "done without authority." Black's Law Dictionary, p. 1525 (7th ed. 1999); The New Shorter Oxford English Dictionary, p. 3459 (1993); Webster's Third New International Dictionary, p. 2483 (1966). See also *Trust Co. Bank v. Atlanta IBM Employees Federal Credit Union*, 245 Ga. 262, 264-265 (264 SE2d 202) (1980). The statute's context demands the use of this common definition. Subsection (a) of OCGA § 32-6-51 prohibits the placement or maintenance of any device within the right-of-way of a public road "except as authorized by" some other law. Subsection (b) prohibits the placement or maintenance of structures visible from public roads which resemble or interfere with traffic-control devices, distract drivers, or obstruct views in a hazardous manner. The General Assembly surely did not contemplate that, under its statutory scheme, a person would be free to place or maintain obstructions or distractions which adversely affect the safety of public roads so long as no other legislation specifically proscribes them. Furthermore, such a rule of law would often produce an unjustifiable disparity between railroads and public roads by permitting obstructions on railroad rights-of-way near grade crossings even though obstructions on public-road rights-of-way are per se unauthorized.

Accordingly, we construe the term "unauthorized," as used in OCGA § 32-6-51 (b), to include not only the placement or maintenance of structures which are prohibited by some statute, code, or local ordinance, but also those which lack any governmental authorization. Contrary holdings are hereby overruled in the following cases: *Williams v. Scruggs Co.*, 213 Ga. App. 470, 471 (1) (445 SE2d 287) (1994); *Whidby v. Mr. B's Food Mart*, 182 Ga. App. 408 (356 SE2d 78) (1987); *Smith v. Hiawassee Hardware Co.*, 167 Ga. App. 70, 72 (1) (305 SE2d 805) (1983).

*Judgment reversed and case remanded. Benham, Hunstein and Thompson, JJ., and Judge Steve C. Jones concur. Fletcher, C. J., and Hines, J., dissent. Sears, P. J., disqualified.*

FLETCHER, Chief Justice, dissenting.

Because the majority changes well-established law regarding the duty to maintain the safety of public roads where they cross railroad tracks, I dissent.

1. In 1973, the legislature enacted the Georgia Code of Public Transportation (GCPT), which repealed and replaced the existing law with respect to public roads and the duty to maintain those roads. The preamble to the Act set forth clearly that its purpose was to "repeal . . . other laws relating to all public roads . . . , and to establish new laws relating thereto." In devising a broad and comprehensive code, the legislature replaced the previously-existing common law duties. The legislature has in other instances specifically retained common law principles in enacting comprehensive legislation,[1] but explicitly chose not to do so with respect to the duty to maintain public roads.

Georgia's appellate courts have consistently recognized that the comprehensive effect of this Act was to replace duties owed by various parties under the common law with a duty owed by the governmental entity responsible for the road. In *Kitchen v. CSX Transp.*,[2] for example, this Court held that by virtue of the GCPT, the duty to maintain public roads and embankments over railroad tracks fell exclusively on the county. Because the statute places the duty exclusively on the governmental entity, private parties are no longer obligated to maintain the public roads.[3] Similarly, the Court of Appeals held in *Evans Timber Co. v. Central of Ga. R. Co.*,[4] that the GCPT precluded a common-law cause of action against a railroad for failure to install protective devices at a grade crossing on a public road. Although private parties are prohibited from unlawfully obstructing public roads under OCGA § 32-6-51 (a) and (b), under OCGA § 32-6-51 (c) it is the duty of the governmental entity to enforce this prohibition. A statutory prohibition against unlawful acts does not equate to an affirmative common law duty as the majority holds.

The specific duty relevant to this case is the duty to ensure that vegetation on private property does not obstruct the vision of a driver on a public road as it crosses a railroad track. Prior to the enactment of the GCPT, railroad companies at least shared the duty to ensure that vegetation on the rights-of-way did not obstruct visibility at

---

[1] See OCGA § 7-1-8 (common law principles supplement Financial Institutions Code); OCGA § 11-1-103 (common law principles supplement the Uniform Commercial Code); OCGA § 53-12-7 (common law principles supplement Georgia Trust Act).

[2] 265 Ga. 206, 208 (453 SE2d 712) (1995).

[3] Id.

[4] 239 Ga. App. 262, 266 (519 SE2d 706) (1999).

grade crossings.[5] However, the GCPT altered this duty and placed it exclusively on governmental entities.[6] Under OCGA § 32-6-51 (c), therefore, the county (which had responsibility for the road in question in this case) alone had the responsibility for ensuring that vegetation on private property did not obstruct the view of a driver on the public road crossing the railroad tracks.

By reversing prior holdings that the creation of a statutory duty under the GCPT precludes a common law remedy, the majority now does great disservice to the stability of the law.

2. I also dissent to the majority's gross expansion of the statutory duty under OCGA § 32-6-51 (b) (3), which makes it unlawful for any person to maintain an "unauthorized" structure that obstructs a clear view from a public road. By holding that "unauthorized" means not only those structures prohibited by law, but also those not formally authorized by governmental action, the majority essentially rewrites the statute to altogether remove the requirement that the structure be "unauthorized." In outlawing any vegetation on private property that does not have the official stamp of governmental approval, the majority improperly overturns years of consistent interpretation of this statute by the Court of Appeals. Again, the majority's frolic into the legislative arena does great disservice to the law and to all owners of private property that abuts public roads.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED OCTOBER 12, 2004 —
RECONSIDERATION DENIED NOVEMBER 22, 2004.

*Mark F. Dehler, Michael E. Perez, Smith & Jenkins, Wilson R. Smith, Robert L. Jenkins,* for Fortner et al.

*Brennan, Harris & Rominger, G. Mason White, James D. Kreyenbuhl, Casey, Gilson & Leibel, Matthew D. Williams, Robert S. McEvoy,* for Town of Register and Ogeechee Railway.

*Alexander T. Stubbs, John M. Hyatt, Hall, Bloch, Garland & Meyer, J. Steven Stewart, F. Kennedy Hall,* amici curiae.

---

[5] See *Atlanta & West Point R. Co.*, 54 Ga. App. 666, 667 (188 SE 915) (1936).
[6] OCGA § 32-6-51.