[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11994
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00990-ODE


DANIEL HOWARD LONG,
Individually, as Surviving Spouse and
Personal Representative for the Estate of Linda E. Long,

Plaintiff - Appellant,

versus

CSX TRANSPORTATION, INC.,
a foreign corporation,

Defendant - Appellee,

J. F. WILLIAMS, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 23, 2015)

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.


PER CURIAM:


In this state-law civil action, Plaintiff Daniel Long appeals the district court's grant of summary judgment in favor of Defendant CSX Transportation, Inc. ("CSXT") on Plaintiff's negligence claim. This case arises out of a collision between a car driven by Plaintiff's wife -- a car in which Plaintiff was also a passenger -- and a CSXT train at a railway crossing in Covington, Georgia ("Emory Street Crossing"). No reversible error has been shown; we affirm.

The Emory Street Crossing consists of a two-lane road that runs in a north-south direction across the CSXT rail lines. Before 1974, the Emory Street Crossing was comprised of four railroad tracks (from north to south: the northern track, the pass track, the main line, and the house track) and was equipped with flashing lights and bells. In 1974, CSXT's predecessor and the Georgia Department of Transportation entered into an agreement ("1974 Agreement") to remove the unused northern track and to install new crossing signals and automatic gates on either side of the Emory Street Crossing. In conformance with the design specifications attached to the 1974 Agreement, the new protective devices were

2

installed 15 feet north of the pass track (then northern-most track) and 15 feet south of the house track (the southern-most track).

Sometime before the mid-1980's CSXT removed the house track: the southern-most track. No corresponding change was made to the location of the protective devices south of the Emory Street Crossing. As a result, at the time of the collision, the protective devices -- which included flashing lights, bells, and an automatic gate -- were located 36 feet south of the then southern-most track: the main line.

On the day of the collision, a westbound train activated the protective devices at the Emory Street Crossing just as Plaintiff's wife approached the crossing from the south. Plaintiff's wife slowed down in response to the flashing lights and bells but came to a full stop only after she had already driven past the automatic gate. The automatic gate then lowered directly behind Plaintiff's car. The car's front bumper was 17 feet from the nearest track. After remaining stopped for about 30 seconds, Plaintiff's wife began driving forward across the track and was struck by the oncoming train. As a result of the collision, Plaintiff's wife died; and Plaintiff suffered severe injuries.

3

Plaintiff filed this civil action against CSXT[1] in state court, alleging, in pertinent part, that CSXT was negligent for failing to relocate the protective devices after taking away the house track.[2]  CSXT removed the case to federal court.  The district court granted CSXT's motion for summary judgment, concluding that CSXT owed no duty to relocate the protective devices at the Emory Street Crossing.

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party.  Holloman v. Mail-Well Corp., 443 F.3d 832, 836-37 (11th Cir. 2006).  Summary judgment is appropriate where the record presents no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. Id.

Plaintiff contends that CSXT had a contractual duty, pursuant to the 1974 Agreement, to relocate the protective devices south of the Emory Street Crossing after removing the house track.  Plaintiff relies on the design specifications attached to the 1974 Agreement, which specify, among other things, that the protective devices were to be constructed 15 feet from the center of each of the

---

[1] Defendants Georgia Department of Transportation and J.F. Williams were dismissed in the district court and are not parties to this appeal.

[2] On appeal, Plaintiff raises no challenge to the district court's determination that Plaintiff abandoned the remaining claims in Plaintiff's complaint.

4

then-contemplated northern-most (the pass track) and southern-most (the house

track) tracks.

Under Georgia law, "the cardinal rule of contract construction is to ascertain

the parties' intent, and where the contract terms are clear and unambiguous, the

court will look to that alone to find the true intent of the parties." Parris Props.,

LLC v. Nichols, 700 S.E.2d 848, 853 (Ga. Ct. App. 2010).

The 1974 Agreement provides that, after the protective devices are installed

and "found to be in satisfactory working order," the devices "shall be immediately

put into service, operated and maintained by [CSXT] so long as [CSXT] operate[s]

trains across" the Emory Street Crossing, or until the parties agree that the signals

are no longer necessary, the crossing is abandoned, or until "other legal

requirements necessitate cessation of operation and maintenance of signals

thereat." In addition, CSXT "will operate and maintain at its sole expense any

grade crossing protective devices that are installed or modified pursuant to this

agreement." (emphasis added).

In determining the parties' intent, we look first to the plain meaning of the

terms used in the contract. In this context, the term "operate" means "to cause or

direct the functioning of; to control the working of"; and the term "maintain"

means "to take action to preserve in working order." See operate, v., Oxford

English Dictionary, http://www.oed.com/view/Entry/131741 (2015); maintain, v.,

5

Oxford English Dictionary, http://www.oed.com/view/Entry/112562 (2015).

Given these definitions, and considering the phrase "operate and maintain" in

context, the 1974 Agreement imposes unambiguously a duty on CSXT to control

the working of, and to keep in working order, the protective devices.

We reject Plaintiff's contention that CSXT's contractual duty to "operate

and maintain" the protective devices also encompasses an additional duty: a duty

to "maintain" at all times the 15-foot distance between the protective devices and

whatever might become in the future the presently existing nearest track.  Nothing

in the 1974 Agreement or the attached design specifications can be interpreted

reasonably as imposing such ongoing duty.  Nor does the plain language of the

1974 Agreement or the attached design specifications require CSXT to relocate the

protective devices upon future removal of a track or for any other reason.  The

contract terms in the 1974 Agreement are clear and unambiguous, imposing no

duty on CSXT to keep on relocating protective devices.

Plaintiff also argues that CSXT had a common law duty to relocate the

protective devices.  Even if we assume -- without deciding -- that CSXT had a duty

at common law related to the installation of protective devices at railroad

crossings, we have accepted that the common law duty has been preempted by the

Georgia Code of Public Transportation ("GCPT"), O.C.G.A. § 32-1-1 et seq.

6

In CSX Transp., Inc. v. Trism Specialized Carriers, Inc., 182 F.3d 788 (11th Cir. 1999), we addressed the effect of the GCPT on a railroad's common law duty to install protective devices at a railroad crossing. We concluded -- based on the Georgia Court of Appeals's decision in Evans Timber Co., Inc. v. Cent. of Ga. R.R. Co., 519 S.E.2d 706 (Ga. Ct. App. 1999) -- that the GCPT "overrule[s] the state common law cause of action against railroads for negligent failure to install adequate warning devices at public grade crossings." Trism, 182 F.3d at 792; see Evans Timber, 519 S.E.2d at 709 ("The GCPT precludes a common-law cause of action against a railroad for the failure to install adequate protective devices at a grade crossing on a public road where the railroad has not been requested to do so by the appropriate governmental entity."). Because the Georgia Supreme Court had not yet decided the issue and because no "persuasive indication [existed] that the state's highest court would rule otherwise," we determined that we were "bound to apply the law as decided by the Georgia Court of Appeals" in Evans Timber. Trism, 182 F.3d at 792.

Plaintiff contends that the Georgia Supreme Court's decision in Fortner v. Town of Register, 604 S.E.2d 175 (Ga. 2004), must alter our conclusions. We disagree. Fortner overruled Evans Timber only "[t]o the extent that the holding of Evans Timber is based on . . . dicta [in the Georgia Supreme Court's decision in Kitchen v. CSX Transp., 453 S.E.2d 712 (Ga. 1995)]." Fortner, 604 S.E.2d at 178.

7

But the Georgia Court of Appeals did not see itself as bound by dicta in the Kitchen opinion; the decision about protective devices in Evans Timber is based on a number of other factors, including the statutory language, trial testimony, and the legislative intent.  See Evans Timber, 519 S.E.2d at 709-10.  Furthermore, the Georgia Supreme Court in Fortner never says it overruled the ultimate conclusion about protective devices in Evans Timber (that the GCPT preempted the railroad's common law duty to install protective devices).  Thus, Evans Timber and Trism remain good law to us.

In addition, to the extent that Fortner speaks about a railroad's common law duty to install protective devices, that language in the Fortner opinion is itself non-binding dicta.  The issue before the state court in Fortner was whether the GCPT preempts a railroad's common law duty "to prevent vegetation from obstructing vision at a railroad crossing": an issue that the Georgia Supreme Court distinguished expressly from the issue raised in this appeal.  See Fortner, 604 S.E.2d at 177-78.

Evans Timber is like this case and is the only Georgia state appellate decision to address directly the issue presented in this appeal.  And nothing in Fortner which is not like this case persuades us it is reasonably certain that the Georgia Supreme Court would reach a different decision.  Thus, we conclude -- consistent with Evans Timber and with our decision in Trism -- that the GCPT

8

preempted the common law duty CSXT might have had to relocate the protective devices at the Emory Street Crossing.

Plaintiff has failed to demonstrate that CSXT owed a duty to relocate the protective devices, as track was removed.  Plaintiff's claim for negligence fails as a matter of law.  See Johnson v. Am. Nat'l Red Cross, 578 S.E.2d 106, 108 (Ga. 2003) (To recover for negligence, a plaintiff must show, among other things, that defendant owed plaintiff a duty).

AFFIRMED.