[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10092

_____

COREY MCCLENDON,
on behalf of themselves and a class of similarly situated persons,
REGINALD HOLDEN,
on behalf of themselves and a class of similarly situated persons,
CHRISTOPHER REED,
on behalf of themselves and a class of similarly situated persons,

Plaintiffs-Appellants,

*versus*

GARY LONG,
in his official capacity and individually,
JEANETTE RILEY,
individually,
SCOTT CRUMLEY,

2                    Opinion of the Court                    21-10092

individually,

                                        Defendants-Appellees,

JOHN AND OR JANE DOES,
1-3, individually,

                                                    Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:19-cv-00385-MTT

_____

Before WILLIAM PRYOR, Chief Judge, GRANT, and HULL, Circuit
Judges.

HULL, Circuit Judge:

        In October 2018, two deputies from the Butts County
Sheriff's Office placed signs in the front yards of the residences of
all 57 registered sex offenders within the County, warning "STOP"
and "NO TRICK-OR-TREAT AT THIS ADDRESS." Before
Halloween 2019, three registered sex offenders living in Butts
County sued, seeking to enjoin the Sheriff from placing the signs

again.   The district court denied a permanent injunction and granted summary judgment in favor of the Sheriff.

After review and with the benefit of oral argument, we conclude that the Sheriff's warning signs are compelled government speech, and their placement violates a homeowner's First Amendment rights.   Thus, we vacate the district court's judgment in favor of the Sheriff and remand for further proceedings consistent with this opinion.

## I.    FACTS AND PROCEDURAL HISTORY

### A.  The Plaintiffs

Plaintiffs Reginald Holden, Corey McClendon, and Christopher Reed are residents of Butts County and are required to register as sex offenders under O.C.G.A. § 42-1-12, *et seq.*   The Georgia statute not only requires individuals with certain convictions to register as sex offenders, but also requires Georgia to classify registrants based on whether they pose an increased risk of recidivism.   *Id.* § 42-1-14.   None of the three plaintiffs have been classified as posing an increased risk of recidivism.

In 2004, Holden was convicted of lewd and lascivious battery in Pinellas County, Florida.   He has been a homeowner in Butts County since May 2017.   He lives by himself and works as a warehouse coordinator.

In 2001, McClendon was convicted of statutory rape of a minor in Butts County.   He lives with his daughter and his parents,

who own the home where they all reside.  He holds a commercial driver's license.

In 2007, Reed was convicted of sexual assault of a minor in Cook County, Illinois.  He works as a truck driver and has lived with his father, who owns their home, since 2011.

In the 2020 order now on appeal, the district court found that all three plaintiffs "have, by all accounts, been rehabilitated and are leading productive lives."  The Sheriff does not dispute this, nor does the record support a contrary finding.

## B.  Halloween 2018

Several days before Halloween in 2018, at the direction of Sheriff Gary Long, Deputies Jeanette Riley and Scott Crumley placed warning signs in the front yards of the residences of every registered sex offender in Butts County, including Holden, McClendon, and Reed.  At the residences, the deputies also gave to, or left for, the registrants a leaflet stating that the signs were the property of Sheriff Long and could not be removed by anyone other than the Butts County Sheriff's Office.

This was the sign, which had the same message on both sides:



According to Deputy Crumley, the signs were placed "in the general vicinity within probably 2 feet front or back of the mailbox or next to the driveway." As an example, this picture shows the sign placed at Plaintiff McClendon's residence:



The Sheriff's Office placed these warning signs in front of the listed homes of all registered sex offenders in Butts County, without considering whether the State had classified any of them as posing an increased risk of recidivism. The deputies collected the signs on November 1.

Plaintiff Holden came home and saw the sign in his front yard in 2018. He then called Deputy Riley. At that time, Riley oversaw Butts County's compliance with Georgia's sex-offender registry requirements. Holden asked why the sign was placed on his lawn without his knowledge or permission. Riley told Holden that the sign was the property of the Sheriff's Office and he should

not remove it from the right-of-way.  Between Riley's statement and the leaflet stating that no one could move the sign except the Sheriff's Office, Holden believed he would be arrested if he moved the sign.  And Sheriff Long later testified that he would not have permitted Holden to cover the sign or place a competing sign.

After the warning signs were placed, Sheriff Long posted a message on his official Facebook page, along with a picture of the sign.  In his post, he explained that the signs had only been placed in front of the homes of registered sex offenders.  His message also represented that Georgia law forbids registered sex offenders from participating in Halloween:



**Butts County Sheriff's Office**
Oct 27, 2018 at 1:50 PM · ⚙

As Sheriff, there is nothing more important to me than the safety of your children. This Halloween, my office has placed signs in front of every registered sex offender's house to notify the public that it's a house to avoid. Georgia law forbids registered sex offenders from participating in Halloween, to include decorations on their property. With the Halloween on the square not taking place this year, I fully expect the neighborhoods to be very active with children trick-or-treating. Make sure to avoid houses which are marked with the attached posted signs in front of their residents. I hope you and your children have a safe and enjoyable Halloween. It is an honor and privilege to serve as your sheriff.

It is now undisputed, however, that Georgia law does not forbid registered sex offenders from participating in Halloween.

At an injunction hearing, Sheriff Long testified that he considered the Facebook post to be an effective way to

communicate to Butts County residents that the signs marked the residences of sex offenders. The goal of his Facebook post was to associate the signs with the registrants who lived on the properties.

Sheriff Long explained that he believed the signs were "imperative" to warn the public about the residences of registered sex offenders. Prior to 2018, the Sheriff's Office had provided registrants with a flier at Halloween and asked them to place it on their doors. He believed that placing a yard sign out by the road would be more effective because it would prevent children from walking to the door.

Since 2013, Long had been Sheriff in Butts County and in that time did not know of any incidents in Butts County involving registered sex offenders on Halloween. In fact, during his six-year tenure as Sheriff, there were no issues with any registered sex offenders in Butts County having unauthorized contact or reoffending with minors at any time.

## C. Plaintiffs' Lawsuit

In September 2019, the plaintiffs sued Sheriff Long in his official and individual capacities, Deputy Riley in her individual capacity, and three John Doe defendants. The complaint alleged that the defendants had violated the plaintiffs' First Amendment rights by compelling their speech.[1] It sought declaratory and

---

[1] The plaintiffs also alleged a state-law trespass claim and a takings claim under the Fifth and Fourteenth Amendments. In their appellate brief, however, they do not raise any arguments about their trespass or takings claims. They argue

injunctive relief, as well as damages.  The district court granted a preliminary injunction based on the First Amendment claim and prohibited the Sheriff from placing the signs in the plaintiffs' yards for Halloween 2019.

In April 2020, the plaintiffs amended their complaint, adding Deputy Crumley as a defendant and dropping the John Doe defendants.  In September 2020, both parties moved for summary judgment.  In addition, the plaintiffs moved for a permanent injunction against the placement of the signs.

The defendants attached to their summary judgment motion a declaration by Sheriff Long, which emphasized that Sheriff Long had never prohibited a sex offender from placing his own sign contesting the Sheriff's warning sign.  Long declared:

> To my knowledge there was never a situation where any sex offender registrant expressed some desire to place the offender's own sign or message relating to the Sheriff's Office sign.  The Sheriff's Office has never had a policy about that, and there is no Sheriff's Office prohibition on signage on private property that complies with state law and local ordinances.
>
> Had any sex offender registrant placed his own sign relating to the Sheriff's Office sign, any response by the Sheriff's Office would have involved review of

only that the district court erred in granting summary judgment on their First Amendment claims.  Thus, we do not address their trespass or takings claims.

21-10092                Opinion of the Court                9

> applicable law and consultation with a competent attorney. However, to my knowledge that situation never arose.

The district court granted the defendants' motion for summary judgment and denied the plaintiffs' motion for summary judgment and a permanent injunction.

Regarding the plaintiffs' compelled speech claim, the district court found that "[t]he Plaintiffs are free to offer speech competing with the Sheriff's Office's views and to disassociate themselves from those views." Thus, because (1) the signs were government speech and (2) the plaintiffs were free to disagree by posting a competing message, no reasonable observer could conclude that the residents of the properties where the signs were posted agreed with the sign's message. The court determined that the signs were not compelled speech because "[n]o reasonable jury could find that there is a risk the Plaintiffs will appear to endorse the signs' message."

The district court further found that Sheriff Long was immune from any damages claims in his official capacity under the Eleventh Amendment, and that all three defendants were entitled to qualified immunity from the plaintiffs' claims for damages in their individual capacities, as they had not violated any clearly established law. The district court dismissed the plaintiffs' First Amendment claims for injunctive relief without prejudice and their claims for damages with prejudice.

The plaintiffs timely appealed.  On appeal, they do not challenge the district court's rulings as to damages or qualified immunity.  The only remedies they continue to seek are declaratory and injunctive relief against Sheriff Long in his official capacity on their First Amendment claim.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, viewing the record in the light most favorable to the non-moving party.  *NAACP v. Hunt*, 891 F.2d 1555, 1559–60 (11th Cir. 1990).  A movant is entitled to summary judgment upon showing that there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III.    SHERIFF'S YARD SIGNS ARE COMPELLED GOVERNMENT SPEECH

First Amendment protection "includes both the right to speak freely and the right to refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S. Ct. 1428, 1435 (1977).  "The right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind."  *Id.* (quotation marks omitted).  The compelled speech doctrine applies to ideological speech and purely factual, non-commercial speech.  *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 797–98, 108 S. Ct. 2667, 2677–78 (1988); *Nat'l Inst. of Family and Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372–73 (2018).

In *Wooley*, the Supreme Court held that it was unconstitutional for the State of New Hampshire to prosecute a citizen for covering the State motto, "Live Free or Die," on his license plate. *Wooley*, 430 U.S. at 713, 97 S. Ct. at 1434–35. Specifically, the Court held that a state could not "constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public." *Id.* The Court stated that the New Hampshire statute "in effect requires that appellees use their private property as a 'mobile billboard' for the State's ideological message or suffer a penalty." *Id.* at 715, 97 S. Ct. at 1435.

This case is materially similar to *Wooley*. The Sheriff's warning signs, like the State motto on the New Hampshire license plate, are government speech. Indeed, the signs expressly bore the imprimatur of government, stating that they were "a community safety message from Butts County Sheriff Gary Long." The deputies placed the signs despite the homeowners' and/or residents' objections. The deputies explained, both verbally and through the accompanying leaflet, that only the Sheriff's Office could remove the signs. *See Mech v. Sch. Bd.*, 806 F.3d 1070, 1075 (11th Cir. 2015) (holding that banners on school fences were government speech because they "[bore] the imprimatur of the school[] and the school[] exercise[d] substantial control over the messages that they convey[ed]"). In other words, the Sheriff required the use of private property as a *stationary* billboard for his

own ideological message, "for the express purpose that it be observed and read by the public." *Wooley*, 430 U.S. at 713, 97 S. Ct. at 1434–35. The Sheriff's warning signs are a classic example of compelled government speech.

In concluding otherwise, the district court erred in two ways. First, it determined that a compelled government speech claim requires a finding that a reasonable third party would view the speech as "endorsed" by the plaintiff. *Wooley* contains no such requirement. *Wooley* held New Hampshire's law unconstitutional because the law required the plaintiff to "participate in the dissemination of an ideological message" against his will, and it used the plaintiff's private property (his vehicle) to do so. *Id.* at 713, 97 S. Ct. at 1434. That the message is intended to be seen by the general public is of course necessary to the idea that the State is using the plaintiff's property to disseminate the message. But the primary harm in *Wooley* is just that: the required use of the plaintiff's property as a "billboard" for government speech. There is no explicit or implicit requirement that those reading the "billboard" believe the plaintiff has endorsed a government message that he is being forced to host. *Id.*; *cf. Hunt*, 891 F.2d at 1566 (holding that Alabama did not compel its citizens' speech by flying the confederate flag at the capitol building because the State did "not compel its citizens to carry or post the flag themselves" *or* "to support whatever cause it may represent").

Second, the district court erred by determining that the plaintiffs' ability to place their own yard signs disagreeing with the

warning signs could cure the original violation. This ignores that the harm here is the forced display of a government message on private property in violation of the "right to refrain from speaking at all," *see Wooley*, 430 U.S. at 714, 97 S. Ct. at 1535, not the "forced appearance of endorsement" of that message. Indeed, yard signs at "one's own residence" are a "distinct and traditionally important medium of expression." *City of Ladue v. Gilleo*, 512 U.S. 43, 56, 57 n. 16, 57 114 S. Ct. 2038, 2046 & n. 16 (1994). Residents, then, should be able to decide whether to use that traditional medium for speech in the first instance.

No limiting principle exists under the district court's post-a-second-sign version of the compelled speech doctrine. *Cf. W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 636, 63 S. Ct. 1178, 1184 (1943) ("If validly applied to this problem, the utterance cited would resolve every issue of power in favor of those in authority. . . ."). If the only constitutional requirement for the government to compel citizens to host its speech on their private property is that it also permits them to post a second sign disagreeing with the first, the Sheriff could place *any* sign identifying himself as the speaker in *any* county resident's yard. This result is inconsistent with *Wooley*. The Sheriff's yard signs are compelled government speech, and their placement in a homeowner's yard is unconstitutional unless the signs are a narrowly tailored means of serving a compelling government interest.

## IV.    SHERIFF'S YARD SIGNS DO NOT PASS STRICT SCRUTINY

When the government "compel[s] speakers to utter or distribute speech bearing a particular message," as the Sheriff does here, such a policy imposes a content-based burden on speech and is subject to strict-scrutiny review. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641–42, 114 S. Ct. 2445, 2459 (1994); *see Pacific Gas & Elec. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 19, 106 S. Ct. 903, 913 (1986). Thus, to be valid under the First Amendment, the placement of the warning signs must be a narrowly tailored means of serving a compelling state interest. *Pacific Gas & Elec.*, 475 U.S. at 19, 106 S. Ct. at 913; *see Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454, 135 S. Ct. 1656, 1671 (2015) (explaining that "narrowly tailored" does not mean "perfectly tailored" (internal quotation marks omitted)).

All parties agree—as do we—that the Sheriff's interest in protecting children from sexual abuse is compelling. However, the yard signs are not narrowly tailored to achieve that goal.

In 2018, the Sheriff's deputies placed the signs in the yards of all 57 registered sex offenders in Butts County. Prior to placing the signs, the Sheriff did not consider whether any of the registrants were classified by Georgia as likely to recidivate.[2] He even

---

[2] In his brief, the Sheriff argues that all convicted sex offenders pose enough of a recidivism risk to justify his signs. Because Georgia has a system requiring all sex offenders to register and be monitored, the Sheriff argues that he can

21-10092            Opinion of the Court              15

admitted that, since he took office in 2013, he had never had an issue with a registrant having unauthorized contact or reoffending with a minor on Halloween or at any other time. The Sheriff has not provided any record evidence that the registrants in Butts County actually pose a danger to trick-or-treating children or that these signs would serve to prevent such danger. And the Sheriff bears the burden of proof on the issue of whether his signs are narrowly tailored. See Otto v. City of Boca Raton, Fla., 981 F.3d 854, 868 (11th Cir. 2020).

Assuming that yard signs alerting people to the residences of registered sex offenders on Halloween would prevent the sexual abuse of children (which, we repeat, is not supported by any record evidence), the signs are not tailored narrowly enough. Sheriff Long testified that the sex-offender registry, which contains each registrant's name, address, and photograph, is available on the State of Georgia's website, on the Butts County website, at Butts County administrative buildings, and at the Butts County Superior Court Clerk's Office. The Sheriff has made the sex offender

---

treat them all as a dangerous class too, and his warning signs can mitigate that danger.

The Sheriff ignores that Georgia's registration system includes an *individual* determination of recidivism risk performed by a State board. *See* O.C.G.A. § 42-1-14. The statute even requires county sheriffs to maintain a list of each resident offender's risk classification. *Id.* § 42-1-12(i)(1). Yet the Sheriff has not placed any evidence into this record showing that the State has classified any of the 57 registrants living within Butts County as having an increased risk of recidivism.

registry widely available through government sources, diminishing the need to require residents to disseminate the same information in yard signs on their private property. And, while "narrowly tailored" does not mean "perfectly tailored," *Williams-Yulee*, 575 U.S. at 454, 135 S. Ct. at 1671 (internal quotation marks omitted), the Sheriff has not met his burden to show the yard signs were narrowly tailored, *see Otto*, 981 F.3d at 868, because he has not offered evidence that any of the yard signs would accomplish the compelling purpose of protecting children from sexual abuse.

For these reasons, the Sheriff's placement of the yard signs in a homeowner's yard is not narrowly tailored to serve the compelling government interest of protecting children from sexual abuse.

## V.    SHERIFF'S ARGUMENT ABOUT RIGHTS-OF-WAY

Even if his signs are compelled government speech that do not survive strict scrutiny, the Sheriff argues that his intent was, and remains, to place the warning signs in the public rights-of-way that abut the private homes where the plaintiff registrants reside. The Sheriff argues that the plaintiffs cannot control what a government actor, like the Sheriff, might place on public property (the right-of-way) in front of their private residences.

Although a government entity may own a public right-of-way outright in fee, private homeowners may also own the property abutting a road in fee and grant an easement to a government entity for various public road or transportation

purposes. *See* O.C.G.A. § 32-3-1. Here, though, the Sheriff has not shown that a government entity—much less the Sheriff—owns a right-of-way in fee across the front yards where the plaintiffs reside.[3] Further, even if a government entity had a right-of-way easement on any of the three properties, the Sheriff's evidence does not address who possesses the easement or for what purpose.

Even assuming that the record established that the government owned the right of way in fee and the signs were placed in the right of way, Georgia law makes it "unlawful for any person to erect, place, or maintain within the dedicated right of way of any public road any sign, signal, or other device" unless authorized by a state law or a municipal ordinance. *See* O.C.G.A. § 32-6-51(a)(1), (2). And the Sheriff conceded at oral argument that no Georgia statute or Butts County ordinance authorizes him to place his warning signs in the public rights-of-way.

While Sheriff Long cites no case law applying § 32-6-51, the plaintiffs cite *Fortner v. Town of Register*, a Georgia Supreme Court decision holding a municipality's actions to be unlawful

---

[3] Before placing the signs in 2018, the deputies did not conduct research to assure themselves the signs would be placed in rights-of-way. In 2019, for the preliminary injunction hearing, the Sheriff introduced some poorly scanned copies of subdivision plats that do not include any keys, legends, or labels; the plat maps are not self-explanatory. He also introduced aerial Google Maps photos of roads with lines drawn across them. But those maps do not indicate who owns the underlying fee where the lines are drawn, or that the lines represent right-of-way easements—much less who possesses any easements or for what purpose.

under § 32-6-51(b), which uses language identical to § 32-6-51(a) to describe who is covered by the statute. *See* 604 S.E.2d 175, 278 Ga. 625 (2004). Section 32-6-51(b) makes it "unlawful for *any person* to erect, place, or maintain" certain unauthorized structures visible from public roads. O.C.G.A. § 32-6-51(b) (emphasis added).

In *Fortner*, the Georgia Supreme Court held that the defendant municipality could be held liable for negligence because it erected unauthorized structures that created a traffic hazard, in violation of § 32-6-51(b). 604 S.E.2d at 178–79, 278 Ga. at 627–28. Because both sections of the Georgia statute contain the same coverage language ("any person") and forbid similar conduct, the *Fortner* decision suggests that the Sheriff, like the municipality in *Fortner*, is subject to the restrictions in § 32-6-51 and is barred by § 32-6-51(a) from placing his warning signs in the alleged public rights-of-way without legislative authority to do so.

Another code section in Title 32 also points us in this direction. Section 32-6-6 makes it "unlawful for *any person*" to camp on state highways. O.C.G.A. § 32-6-6(b) (emphasis added). It continues: "This Code section shall not apply to state or local government officials or employees acting in their official capacity and while performing activities as part of their official duties." *Id.* § 32-6-6(d). If the Georgia legislature did not consider "government officials or employees acting in their official capacity" to be "any person" in Title 32, then arguably there would be no

need to carve them out of the highway camping restriction in § 32-6-6.[4]

At bottom, state law governs the right-of-way issues here, and we are loath to opine conclusively about them. All we do in this case is conclude that, based on this record and the limited briefing before us, the Sheriff has failed to show either that he is not covered by the sign-posting prohibition in § 32-6-51(a) or that he is authorized to place the yard signs.

## VI.    APPLICATION TO THE THREE APPELLANTS

We now apply the above First Amendment principles to the plaintiffs in this case.

### A.  Plaintiff Holden Is Entitled to Summary Judgment

Plaintiff Holden owns his home. The Sheriff's warning sign impermissibly burdens his First Amendment right to be free from being forced to host a government message on his private property. The First Amendment prevents Sheriff Long from

---

[4] All sections in Title 32 use this broad definition of "person": "any individual, partnership, corporation, association, or private organization of any character." O.C.G.A. § 32-1-3(20). The Sheriff's brief, however, did not cite this definitional code section or case law construing it, nor did his brief expressly argue that he is not a "person" or "individual" under § 32-1-3(20).

Rather, the Sheriff's conclusory argument, as best we can tell, is that "private citizens" cannot place signs in public rights-of-way and that "[g]overnment signs commonly are placed on right-of-way areas in Butts County." Since the Sheriff does not cite or argue about this definitional code section, nothing in our opinion should be read as construing § 32-1-3(20).

posting his warning sign on Holden's property. Thus, we reverse the district court's judgment in favor of the Sheriff on Holden's First Amendment claim and remand for the district court (1) to grant summary judgment in Holden's favor on that claim and (2) to permanently enjoin the Sheriff from requiring Holden to display a sign on his front yard relating to his registered sex offender status.

## B. Issues Remain as to Plaintiffs McClendon and Reed

Plaintiffs McClendon and Reed both live with their parents on property owned by their parents. McClendon, however, claims he has a right to exclude persons from his parents' property, he helps with chores, and he has paid rent in the past. And the record is not developed as to Reed's arrangement as a resident or tenant on his father's property. Reed's father, though, did call the Sheriff's Office to complain that he did not want the sign on his property.

If Plaintiffs McClendon and Reed have no ownership or tenancy interest in the properties where they reside (such as under state common law or by lease contract), then threshold issues arise as to whether they have any right to complain about a sign displaying government speech on another person's property. We need not address these threshold issues because McClendon and Reed have now expressed an intent on remand to seek to amend their complaint to add their parents as plaintiffs. If the district court allows the plaintiffs to so amend, that would resolve the issues. If not, the district court will need to address these issues in the first instance.

At this stage, neither McClendon, Reed, nor the Sheriff have shown they are entitled to summary judgment. Thus, we vacate the entry of judgment for the Sheriff on McClendon's and Reed's First Amendment claims and remand for further proceedings.

## VII.    CONCLUSION

For these reasons, we: (1) reverse the district court's judgment in favor of the Sheriff on Plaintiff Holden's First Amendment claim and remand with instructions to enter summary judgment and a permanent injunction in Holden's favor; and (2) vacate the judgment in favor of the Sheriff on Plaintiffs McClendon's and Reed's First Amendment claims and remand for further proceedings consistent with this opinion.

**REVERSED IN PART; VACATED IN PART; AND REMANDED.**