# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 5D2022-2966
LT Case No. 2019-CF-001352

_____

MICHAEL CRIST,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Sumter County.
Mary P. Hatcher, Judge.

Matthew J. Metz, Public Defender, and Jane Almy, Assistant
Public Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard A.
Pallas, Jr., Assistant Attorney General, Daytona Beach, for
Appellee.


January 10, 2025


MAKAR, J.

    At issue are governmentally compelled designations on the
front of Florida driver licenses and ID cards of people convicted of

sexual crimes. Here is an exemplar from the website of the Florida Department of Highway Safety and Motor Vehicles:



The Department explains that the "Florida driver license and ID card allows for the identification of sexual predators and sexual offenders with a blue identifier on the bottom right of the front of the card. Sexual predators will have '**Sexual Predator**' spelled out on the card, while sexual offenders have **'943.0435, F.S.'** listed in this area." *See Florida's NEW Driver License and ID Card*, Florida Highway Safety and Motor Vehicles, https://www.flhsmv.gov/driver-licenses-id-cards/newdl/ (last visited June 7, 2024).[1] This case involves the "SEXUAL PREDATOR" designation, not the sexual offender designation; the latter—as indicated—uses only the number of the sexual offender statute, "section 943.0435," rather than a phrase such as "SEXUAL OFFENDER," or the like. In general, sexual predators are sexual offenders who have committed two or more sexual

---

[1] Because this case involves a Florida driver license, rather than a Florida ID card, references to the former will generally include the latter for convenience. In addition, references will be to a "driver license," the phrase used in Florida Statutes, rather than the colloquial "driver's license." *See* § 322.01(18), Fla. Stat. (2024).

offenses, who used physical violence in such offenses, or who preyed on children. § 775.21(3)(a), Fla. Stat. (2024).

In 2001, at the age of 26, Michael Crist, attempted to engage in unlawful conduct with a minor under the age of 12. In 2002, he pled no contest to violations of section 794.011(3), Florida Statutes, (attempted sexual battery on a child under the age of 12), and section 800.04(5)(a) & (b), Florida Statutes, (lewd and lascivious molestation), resulting in eight years in prison and seventeen years of supervision. He was released from custody in May 2008 and thereafter resided in Sumter County.

Over a decade later, a probation officer went to Crist's home to conduct a sexual predator registration check; Crist had no prior supervisory violations at that time. The officer asked for Crist's driver license but snatched it away when Crist appeared to be scratching off a sticker (a Happy Face emoji) placed over the SEXUAL PREDATOR designation. Crist was charged with possession of a driver license without the required designation and for tampering with evidence (by attempting to scratch off the sticker).

Crist moved to have the statutes requiring the SEXUAL PREDATOR designation (sections 322.212(5)(c) and 322.141 (3)(a), Florida Statutes) declared unconstitutional as applied to him. He relied on recent cases from the Louisiana Supreme Court and a federal district court in Alabama, each holding that similar designations amounted to compelled speech in violation of the license holder's constitutional rights under the First Amendment. The trial court, however, held that (a) Crist failed to provide any Florida caselaw that the sexual predator designation on Crist's license was compelled speech and (b) the designation "is less intrusive and less restrictive than any alternative that would still meet the compelling interest of public notification." Crist appeals the denial of his motion.

I.

Florida has a compelling governmental interest in protecting the public from persons who have been convicted of offenses deemed sexual predation. That's because the legislature has

declared that sexual predators "present an extreme threat to the public safety" and "are extremely likely to use physical violence and to repeat their offenses." § 775.21(3)(a), Fla. Stat. Indeed, the legislature has said that Florida "has a compelling interest in protecting the public from sexual predators and in protecting children from predatory sexual activity, and there is sufficient justification for requiring sexual predators to register and for requiring community and public notification of the presence of sexual predators." *Id.* § 775.21(3)(c).

Because of the "high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses," the State has sufficient "justification to implement a strategy that includes":

> 3. Requiring the registration of sexual predators, with a requirement that complete and accurate information be maintained and accessible for use by law enforcement authorities, communities, and the public.

> 4. Providing for community and public notification concerning the presence of sexual predators.

*Id.* § 775.21(3)(b)3. & 4. Pursuant to legislative directive, Florida has online registration and notification systems. Sexual offenders and sexual predators are required to register and provide detailed information on a real-time basis such as address, phone number, internet identifiers, autos, and in-state travel. Their photos and personal information (race, sex, hair color, eye color, height, weight) are posted for identification. A link on the site produces printable flyers with a registrant's photo, background, offenses and even a QR code (specific to each registrant) for posting. Florida provides online search engines for locating sexual offenders and sexual predators that generate maps so the public can see if such individuals live in their neighborhoods. The system also has a notification/tracking feature that allows members of the public to receive an email whenever a sexual offender or sexual predator moves close to an address in Florida, which could be a home, workplace, school, daycare, and so on.

This case does not directly involve the registration and notification systems or the search engines that are available for law enforcement and the public to identify, locate, and receive notifications about sexual offenders and predators. As a general matter, these systems are deemed constitutional with minimal judicial scrutiny because they have a rational basis. *See, e.g., Doe v. Moore*, 410 F.3d 1337, 1344–48 (11th Cir. 2005) (finding that the registration and notification requirements under the Sex Offender Act do not infringe on sex offenders' substantive due process rights because it is "rationally related to a legitimate government interest"); *United States v. Ambert*, 561 F.3d 1202, 1209–10 (11th Cir. 2009) (finding *Moore*'s substantive due process analysis applicable where "[t]he same putative 'right' of a sexual offender to refuse to register and to prevent publication is at issue in this case under a similar national registration statute, and the restrictions contained in the federal statute, similarly, are rationally related to Congress' legitimate goal in protecting the public from recidivist sex offenders"); *see also Butler v. State*, 923 So. 2d 566, 569 (Fla. 4th DCA 2006) (analyzing *Moore*). Though these systems are generally valid and not under scrutiny in this case, they are relevant in analyzing the legal issue presented: whether the designation of "SEXUAL PREDATOR" on a Florida driver license violates constitutional principles as a form of compelled speech by the license holder that is not narrowly tailored under the applicable strict scrutiny test, given the registration and notification systems just described.

A. Florida Driver Licenses and Compelled Speech.

The first step is determining the nature of a Florida driver license. Is it a governmentally controlled forum containing government speech, private speech, or a hybrid of the two? The State candidly and justifiably concedes that it has not argued that the SEXUAL PREDATOR designation on a Florida driver license is purely government speech subject to little or no judicial scrutiny. Nor could it.

On its face, a Florida driver license is a conglomeration of governmental and personal speech, some of it compelled by law to be on the front of the license (such as the "Sexual Predator" designation) and some of it voluntarily placed there (such as the

"Organ Donor," "Veteran," "Deaf" and "Developmentally Disabled" designations). The back of the card has additional voluntary designations for holders of Lifetime Florida Wildlife Commission freshwater fishing, hunting, saltwater fishing, and sportsman licenses, among others; symbols such as a bass, deer, sailfish, and rifle/rod are used. Florida driver licenses are essentially speech hybrids.

With its mixture of information, images, and symbols, a Florida driver license cannot be seen as simply a plastic card containing *only* governmental speech. That's because several of its features are private or personal information that license holders want to convey to others. Plus, most of the governmentally required information, such as address, date of birth, sex, height, and sexual crimes, is not purely governmental; it is factual information about the license holder that is personal only to him individually. Some people don't like certain facts about themselves to be known, such as their confidential home addresses (e.g., police officers, public officials, etc.) or their age (for vanity or other reasons), their sex presented in a binary mode (a contemporary matter of controversy), or that they are a certain height. In short, a Florida driver license is not purely a governmentally controlled forum with only governmentally approved viewpoints or speech; it is a hybrid of government and private speech.

Even if it were purely government speech it would still be subject to constitutional analysis under the compelled speech doctrine when the governmental message is placed on a license tag, a driver license, or any other item that is readily associated with an individual. The Supreme Court directly addressed this point, stating the "Free Speech Clause itself may constrain the government's speech if, for example, the government seeks to compel private persons to convey the government's speech." *Walker v. Tex. Div., Sons of Confederate Vets., Inc.*, 576 U.S. 200, 208 (2015); *see Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1325 (M.D. Ala. 2019) ("But the fact that a license is government speech does not mean it is immune from the compelled speech analysis."); *see also State v. Hill*, 341 So. 3d 539, 552 (La. 2020) ("Thus, even though an identification card is government speech, a compelled speech analysis may still be required."). Here, the

governmental message is "I, as the holder of this license, am a sexual predator."

Next is the question of whether the sexual predator designation is "compelled speech." As just mentioned, a Florida driver license is not immunized from the compelled speech doctrine simply because it is governmentally controlled and contains some governmentally approved information. The State concedes that even if a Florida driver license was considered governmental speech, it would still be subject to judicial review as compelled speech.

Indeed, the license plate in *Wooley v. Maynard*, was governmentally controlled and contained an ideological expression ("Live Free or Die") that the government supported, but that didn't stop the United States Supreme Court from concluding that Wooley, who disagreed with the slogan, had a constitutional right not to display it. 430 U.S. 705, 716–17 (1977). Government speech is a different animal from compelled speech. The former focuses on the government's interest in expressing *its own views* without compelling a private person to communicate information or a message he does not wish to convey; the latter involves the government *compelling* a person to do so.

The test for compelled speech, applied here, is whether the SEXUAL PREDATOR designation communicates information compelled by the government that is readily linked or associated with the plaintiff. *See Cressman v. Thompson*, 798 F.3d 938, 949–51 (10th Cir. 2015); *see generally Wooley*, 430 U.S. at 714–17. This test is easily met. The designation is compelled by the government over Crist's objection, and the designation is *directly* associated with Crist: it is a designation on a driver license that is personal to him alone. *See Doe 1*, 367 F. Supp. 3d at 1326 ("Identification cards, by contrast, are personalized. They are meant to convey substantive personal information about their holders. They are meant to be displayed, never to be given away.").

By compelling that the designation be on Crist's license, the State is directly conveying that information through Crist, who must have his driver license in his possession 24/7. He is required

7

to present it upon demand at any time or place. It is universally understood to be *his* driver license, one that he must present in myriads of daily transactions with businesses, government offices, and others that require personal identification. He paid for it, he must possess it, and he has a due process right in retaining the privilege of using it. The question is not who owns or has a property interest in a driver license, but whether it is readily linked or associated with its holder; here, that is clearly Crist. His driver license is not a duly issued official state document in a government filing cabinet (or computer file) or posted on a governmental website. It is governmentally regulated, but that does not diminish the fact that the license is personal and readily identifiable as Crist's personal license with information related directly to him. *See Doe 1*, 367 F. Supp. 3d at 1326; *Mariach v. Spears*, 570 U.S. 48, 57 (2013) ("To obtain a driver's license . . . state DMVs, as a general rule, require an individual to disclose detailed personal information, including name, home address, telephone number, Social Security number, and medical information."). In short, it is *Crist's* identity on the card, not that of the government; no reasonable observer would conclude it is the *government's* identity that is featured on Crist's driver license.

Plus, the State's ability to take away a driver license under certain circumstances does not give the government the unreviewable right to place any message or information it wants on it and force persons to convey that message or information to others. Just like a driver license, a Florida license plate is subject to forfeiture, but as in *Wooley* the government cannot compel a message on it. Government regulation of driver licenses likewise does not give the government the right to compel whatever message the government desires. Just because the government regulates—or even owns—lapel buttons or t-shirts emblazoned with SEXUAL PREDATOR doesn't mean it can force individuals such as Crist to wear them at all times and all places; nor could it force the expression of political viewpoints ("Vote Democratic!") or causes ("Build the Wall!"). As the Supreme Court has reminded us, the "Free Speech Clause itself may constrain the government's speech if, for example, the government seeks to compel private persons to convey the government's speech." *Walker*, 576 U.S. at 208.

8

Furthermore, a driver license is readily viewable to a broad swath of members of the public who require it for transacting business and other essential activities. It is not like a road-side billboard or a car's license plate, both of which are in public spaces and visible to members of the public generally. But both do not directly or necessarily convey information about a specific person or who even owns them. The license tag in *Wooley*, for example, was on Wooley's car, but observers would not necessarily know who owned the car. In sharp contrast, a Florida driver license is a privately possessed card that displays compulsory information that is directly personal to the license-holder and thereby readily associated with the individual person whose face and name are on it. As the court in *Hill* stated, "[e]ven more so than a license plate on a car, an identification card is personalized to such an extent that it is readily associated with the bearer." *Hill*, 341 So. 3d at 549.

A Florida driver license is a forum in which a license holder, who has been convicted of a sexual offense, is compelled to disclose the *fact* of his criminal history against his wishes. That a fact is compelled rather than a political opinion or policy doesn't matter. The Supreme Court has made clear that the compelled speech doctrine applies whether the government compels political speech *or facts*. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797–98 (1988) (stating that its precedents "cannot be distinguished simply because they involved compelled statements of opinion while here we deal with compelled statements of 'fact': either form of compulsion burdens protected speech").

As both the Louisiana Supreme Court and the Alabama federal district courts have concluded, a compelled disclosure emblazoned on a driver license is a form of compelled speech subject to constitutional limitations. Indeed, the Alabama federal court recently concluded that an identification card with a sexual offender designation is compelled speech.

> This is so for the same reasons that the court previously found the "CRIMINAL SEX OFFENDER" ID label compelled speech. *See Doe 1*, 367 F. Supp. 3d at 1323–27 (explaining why an ID label requirement attached to a

9

certain group of people constitutes compelled speech). Contrary to Defendant's assertions, the challenged provision does not simply require sex offenders to "maintain and possess an ID;" it requires the ID to bear a specific, expressive message. Indeed, the explicit purpose of the provision is to express a class-based message. Like a license plate that says, "Live Free or Die," *Wooley*, 430 U.S. at 714, 97 S.Ct. 1428, or a yard sign that warns away citizens from a sex offender's home, *McClendon v. Long*, 22 F.4th 1330, 1333 (11th Cir. 2022), a required message classifying someone as a sex offender on their personal ID constitutes compelled speech.

*McGuire v. Marshall*, No. 2:19-CV-174-WKW, 2024 WL 2401833, at *60 (M.D. Ala. May 23, 2024) (citation and footnote omitted). Similarly, requiring a message declaring a person is a SEXUAL PREDATOR on his personal driver license constitutes compelled speech, which may be constitutional if it meets the applicable judicial test.

## B. The Judicial Test

The final step is applying the proper judicial test to assess whether the means used to advance the government's compelling interest in protecting the public from recidivism by sexual predators is permissible under free speech precedent. The few cases that discuss the proper test in the context of sexual offenders/driver licenses apply the most difficult test, that of strict scrutiny. *See, e.g.*, *Hill*, 341 So. 3d at 545; *Doe 1*, 367 F. Supp. 3d at 1326.[2]

---

[2] An anomaly identified in *Hill* is that polar opposite tests apply depending on how a "branded-identification card" is characterized, i.e., whether it "amounts to government speech or compelled speech." *Hill*, 341 So. 3d at 545. "If *compelled speech*, the branded identification card faces *strict scrutiny*. If *government speech*, the branded identification card faces *little to no scrutiny*." *Id.* (emphases added). We note that the Supreme Court in recent years has softened the judicial test for content-based regulations in limited situations, but not yet in the

They do so in part based on the Supreme Court's decision in *Wooley*, which held that New Hampshire could not punish Mr. Wooley for covering up the state motto, "Live Free or Die," on his state-issued license plate. The rationale in *Wooley* was that even when a state's purpose in compelling a message on a vehicle's license plate is "legitimate and substantial," that "purpose cannot be pursued by means that broadly stifle fundamental personal liberties *when the end can be more narrowly achieved*. The breadth of legislative abridgement must be viewed in the light of *less drastic means for achieving the same basic purpose*." 430 U.S. at 716 (citation omitted) (emphases added). The highlighted language emphasizes the narrowness of the state's choices when it chooses to compel a person to convey information that they do not wish to express or associate with.

The Alabama and Louisiana cases also point to the multitude of Supreme Court precedents holding that a content-based restriction on speech must pass strict scrutiny, meaning that the state "must have a compelling interest, and it must have adopted the least restrictive means of achieving that interest." *Doe 1*, 367 F. Supp. 3d at 1326 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (stating that content-based restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests")); *see also Hill*, 341 So. 3d at 553 ("The branded identification card is compelled speech, and it is a

---

compelled speech context. *See, e.g., Vidal v. Elster*, 602 U.S. 286, 300 (2024) ("Because of the uniquely content-based nature of trademark regulation and the longstanding coexistence of trademark regulation with the First Amendment, we need not evaluate a solely content-based restriction on trademark registration under heightened scrutiny."); *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 190 (2007) (noting that content-based regulations of speech are presumptively unconstitutional, but that in the "unique context of public-sector agency-shop arrangements, the content-based nature of [the statute at issue] does not violate the First Amendment"). Whether it or our supreme court decides to do so is their prerogative alone.

11

content-based regulation of speech that consequently must pass strict scrutiny.").

Both courts concluded that requiring the display of "sexual offender" or the like on an individual's state-issued identification card is not the least restrictive way of advancing the state's interest. In *Hill*, the court concluded as follows:

> The branded identification card is compelled speech, and it is a content-based regulation of speech that consequently must pass strict scrutiny. While the state certainly has a compelling interest in protecting the public and enabling law enforcement to identify a person as a sex offender, Louisiana has not adopted the least restrictive means of doing so. A symbol, code, or a letter designation would inform law enforcement that they are dealing with a sex offender and thereby reduce the unnecessary disclosure to others during everyday tasks. The sex offender registry and notification is available to those who have a need to seek out that information, while also not unnecessarily requiring disclosing that information to others via a branded identification. As Louisiana has not used the least restrictive means of advancing its otherwise compelling interest, the branded identification requirement is unconstitutional.

*Hill*, 341 So. 3d at 553. Likewise, in *Doe 1*, the court concluded that:

> The State has a compelling interest in enabling law enforcement to identify a person as a sex offender. But Alabama has not adopted the least restrictive means of achieving that interest. By using "CRIMINAL SEX OFFENDER" instead of a single letter, the State goes beyond what is necessary to achieve its asserted interest.

*Doe 1*, 367 F. Supp. 3d at 1326 (internal citation omitted). The court noted that Alabama conceded that it "could use a single letter to designate sex offenders" and that "law enforcement

officers would know what that single letter meant." *Id.* at 1326–27. As such, "using one letter would keep officers informed while reducing the unnecessary disclosure of information to others." *Id.* at 1327 (footnote omitted). Notably, Alabama's legislature responded to *Doe 1* by dispensing with the CRIMINAL SEX OFFENDER designation on identification cards in favor of the "code 'CV606' in small black font," which was upheld as constitutional. *McGuire*, 2024 WL 2401833, at \*60.

Both courts focused on the law enforcement's need to identify sexual offenders via a symbol, code, or letter on the identification card. The court in *Hill* also highlighted that a state-compelled sex offender registry and notification system was publicly available "to those who have a need to seek out that information, while also not unnecessarily requiring disclosing that information to others via a branded identification." *Hill*, 341 So. 3d at 553.

The reasoning of both the Louisiana Supreme Court and the Alabama federal court are persuasive and support the conclusion that the SEXUAL PREDATOR designation is not narrowly tailored or the least restrictive means, thereby failing strict scrutiny. As a content-based restriction, the designation is presumptively unconstitutional, requiring that the "government proves that [the restriction is] narrowly tailored to serve compelling state interests." *Reed,* 576 U.S. at 163. Unlike legislation generally, which is presumed constitutional, the restriction at issue is presumed to be unconstitutional because it forces an individual to convey governmentally compelled information over his objection. It does not mean the government automatically loses, only that it must prove that its restriction is narrowly tailored and no broader than necessary.

Here, the State relies on the statutory language of the legislature's purpose for a registration and notification system of sexual offenders and sexual predators. The legislature identified two goals: registration and notification, both of which are substantially advanced by Florida's comprehensive registration and notification systems, by which the public can freely obtain information and emails about sexual offenders and predators who live in or move into their neighborhoods. The State clearly advances its compelling interest through these systems, which

meet constitutional standards by disseminating information broadly *without compelling speech* by individual registrants.

The question, however, is whether—given the robust registration and notification systems in place for use by the general public and law enforcement—the State has proven it has no less intrusive means and must necessarily use the SEXUAL PREDATOR designation on driver licenses rather than use a code or statute number as it does for sexual offenders. Existing precedent, though limited, holds that the use of a code or number is constitutional under compelled speech analysis because they provide information to persons *with a need to know it*; it is narrowly tailored in that sense. Persons needing to screen for sexual predators can ask to see a driver license and determine if it has the code/number. The court in *Doe 1* pointed out that the "general public most likely would not know what that single letter meant" thereby reducing the potential for overbroad disclosures of compelled speech. *Doe 1*, 367 F. Supp. 3d at 1327. In other words, compelled use of the SEXUAL PREDATOR designation to the world at large is overbroad if a more narrow and functional means of communication is available.

The point of strict scrutiny is that the government must carefully tailor a compelled speech policy that is no broader than necessary to advance its interest in protecting the public. In this regard, not every situation calls for the compelled public disclosure that an individual has previously committed a sex crime. A requirement that a registrant publicly wear a governmentally compelled tee shirt or badge saying SEXUAL PREDATOR would be highly effective in notifying the public about the person's past sexual criminality; but it is doubtful such a requirement would be narrowly tailored to pass constitutional analysis. The same would be true of tee shirts or badges saying FELON, STALKER, MURDERER, and so on for those released into society but who may have committed crimes with elevated risks of recidivism. In a similar way, the SEXUAL PREDATOR designation on driver licenses is not a narrowly tailored means to inform only those persons who have the greater need to know about an individual's past sexual criminality.

14

The conclusion that the "SEXUAL PREDATOR" designation on Crist's driver license is impermissibly compelled speech under the prevailing judicial test in no way involves the use of judicial power to compel a specific change to the statutory law. It merely holds that this specific designation is off-limits under the Bill of Rights enacted by and for the People; no judicially compelled change of law is made. Whether the government chooses to use a particular number, symbol, color, or font size in place of the current designation is not something a court directs or involves itself in. The State might choose to use statute numbers but use red for sexual predators and blue for sexual offenders; it might use symbols that the public readily understands; it might choose to issue separate free-standing sexual offender identification cards that sexual offenders and sexual predators must present when asked. These are decisions for the legislative and executive branches, not the judicial branch.

## II.

Florida laudably has rigorous registration and notification systems designed to closely monitor sexual offenders and sexual predators. The systems inform the public and law enforcement about the location and backgrounds of sexual offenders and sexual predators, which includes notifications to the public and institutions such as schools and churches when sexual offenders and predators reside in their neighborhoods. The designation of SEXUAL PREDATOR on a personal driver license, however, is the type of compelled speech that is a step too far as the Louisiana Supreme Court and an Alabama federal court have held. The availability of numbers, symbols, or codes in various colors and fonts, as an example, shows a lack of narrow tailoring and that the government's compelling interest in protecting the public can be achieved without compelling speech impermissibly. We emphasize that our decision is based on the existing United States Supreme Court and lower court precedent on compelled speech analysis and not out of sympathy for those who have committed the underlying crimes for which they have served their punishment. Because this issue is one of great public importance, the following question is certified for the Florida Supreme Court's consideration:

15

Does the requirement that a Florida driver license contain the designation SEXUAL PREDATOR for those persons within that category constitute compelled speech that is unconstitutional under the strict scrutiny test?

Because of the importance and unsettled nature of the issue, we withhold issuance of the mandate and stay our decision, holding it in abeyance to allow for Florida Supreme Court review.

WALLIS, J., concurs.
SOUD, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

SOUD, J., dissenting.

Is it constitutional for the People of Florida to require a convicted sexual predator such as Michael Crist—*as a consequence of his conviction*—to have his state-issued Florida driver license marked with the words "SEXUAL PREDATOR" as one means of protecting vulnerable children from those who may desire to sexually abuse them? Of course it is.

Yet, remarkably, the majority in its ill-conceived opinion concludes otherwise and declares unconstitutional sections 322.212(5)(c) and 322.141(3)(a), Florida Statutes (2021). Undeterred by the long-standing and strong presumption that duly enacted Florida statutes are constitutional, the majority races into a dangerously wayward opinion that ends in a repugnant result with deleterious effect.

First, the majority unjustifiably strips from law enforcement and the public generally the ability to readily identify through a government-issued certificate (a driver license) one who is a convicted sexual predator, thereby threatening the public safety, even if unintentionally, by heightening the risk sexual predators pose to Florida's children and families. Second, some may argue (wrongly) that the analysis employed by the majority extends beyond this case and opens the door to others who seek editorial control over information on a driver license that more fits the whim of the licensee. This Court should immediately return that door to its closed and locked position.

The majority's decision simply strains reason and understanding. And it is founded upon the softest and loosest of constitutional soil.

Therefore, I dissent.

17

## I.

In 2001, Michael Crist was charged in Sumter County, Florida with three counts of capital sexual battery and two counts of first-degree lewd or lascivious molestation. More specifically, Crist was charged with the penile-anal rape of a boy less than 12 years of age. He was further charged with engaging in oral sex and other lewd touching with the young boy during a five-month period.

Ultimately, Crist was allowed to enter a plea agreement by which he pleaded guilty to lesser included offenses: three counts of attempted sexual battery upon a person less than 12 years of age and two counts of second-degree lewd or lascivious molestation. By his plea, Crist admitted his guilt and acknowledged that the child victim was "truthful" concerning the allegations and that, subsequent to the charged conduct, Crist invited the child-victim to his home "intend[ing] to again engage in sexual acts with that child." Crist also acknowledged that another minor child "who first brought [his] criminal actions to light concerning the [young male] child victim in the pending case has been truthful concerning [Crist's] sexual overtures toward her." By the terms of the plea, Crist was designated a sexual predator and sentenced to 8 years in prison followed by 17 years of sex-offender probation.

Upon release from prison, Crist began serving the sex-offender probation portion of his sentence. By operation of section 322.141(3)(a), Florida Statutes, Crist's Florida driver license was to bear the marking "SEXUAL PREDATOR." While Crist was on probation, a law enforcement officer went to Crist's residence to conduct a registration check and verify his current address. When Crist was asked for his identification, the law enforcement officer observed Crist "picking" at the license while he delayed giving it to the officer. Based on the officer's experience, he believed Crist was trying to remove a sticker from his license that concealed the "SEXUAL PREDATOR" marking. When the officer was able to obtain Crist's license, he observed a smiley face

18

sticker covering the statutorily required marking. Crist was arrested.

Crist was charged with violation of section 322.212(5)(c), Florida Statutes, and attempted tampering with evidence. As a result of these charges, he also was alleged to have violated his probation. Crist filed his motion asking the trial court to declare sections 322.212(5)(c) and 322.141(3)(a) unconstitutional. Crist argued that the required "SEXUAL PREDATOR" marking on his driver license compels his speech, in violation of the First Amendment to the United States Constitution.

The trial court denied the motion. Thereafter, Crist entered an admission of violation of probation and related plea agreement to the new charges, reserving the right to appeal the denial of his motion. Crist was sentenced to 295 months in prison for violation of his probation (just more than 24.5 years). He also was sentenced to concurrent terms of five years in prison on each of his two new crimes. This appeal followed.

## II.

Florida statutes are cloaked with a "strong presumption" in Florida law that they are constitutional. *Montgomery v. State*, 69 So. 3d 1023, 1026 (Fla. 5th DCA 2011) (citing first *DuFresne v. State,* 826 So. 2d 272, 274 (Fla. 2002), and then *Adhin v. First Horizon Home Loans*, 44 So. 3d 1245, 1250 (Fla. 5th DCA 2010)). "It is a fundamental principle of our constitutional jurisprudence that all doubts as to the validity of a statute are to be resolved in favor of constitutionality where reasonably possible." *Westerheide v. State*, 767 So. 2d 637, 647 (Fla. 5th DCA 2000), *approved*, 831 So. 2d 93 (Fla. 2002) (internal quotation marks omitted). This presumed constitutionality endures until the contrary is shown. *Id.* Thus, one who challenges a statute's constitutionality shoulders "a heavy burden of establishing its invalidity." *Montgomery*, 69 So. 3d at 1026 (citing *Wright v. State,* 739 So. 2d 1230, 1231 (Fla. 1st DCA 1999)).

## A.

19

The Florida Sexual Predators Act, found in section 775.21, Florida Statutes, governs those who have been convicted of qualifying sexual offenses set forth therein. *See* § 775.21(4)(a), Fla. Stat. To serve the State of Florida's "compelling interest in protecting the public from sexual predators and in protecting children from predatory sexual activity," *see* § 775.21(3)(c), Fla. Stat., the Act requires that all individuals convicted of qualifying offenses shall, at the time of sentencing, be designated a "sexual predator." *See* § 775.21(5), Fla. Stat. The convicted sexual predator also is subjected to, *inter alia*, registration requirements, *see* § 775.21(6), Fla. Stat., and public-notification procedures. *See* § 775.21(7), Fla. Stat.

Further, a Florida driver license or identification card issued to a designated sexual predator "shall have on the front of the license or identification card . . . the marking 'SEXUAL PREDATOR.'" § 322.141(3)(a), Fla. Stat. If the designated sexual predator fails to display or otherwise alters this required marking on the driver license issued to him, he commits a third-degree felony. *See* § 322.212(5)(c) and (6), Fla. Stat.

B.

Crist argues that the "SEXUAL PREDATOR" marking on the driver license issued to him by the Florida Department of Highway Safety and Motor Vehicles is unconstitutional because it compels his speech in violation of the First Amendment to the United States Constitution. I disagree.

To determine the constitutionality of sections 322.141(3)(a) and 322.212(5)(c), we must resolve two issues. First, does the statutorily required "SEXUAL PREDATOR" marking now placed upon the Florida driver license issued to Crist compel *his* speech? Finally, if so, does such compelled speech violate the First Amendment to the United States Constitution?

In my view, the answer to the first question is no—the required marking does not compel Crist's speech. Further, assuming *arguendo* such marking did compel Crist's speech, the answer to the second question also is no—the required marking does not violate the First Amendment.

20

1.

The statutorily required "SEXUAL PREDATOR" marking on Crist's driver license does not compel speech *by Crist*. Rather, it is the government of the State of Florida that speaks.

Government speech has been described as speech by the government in furtherance of its purposes or programs. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 232 (2015) (Alito, J., dissenting). And when the government chooses to speak, it does not trigger First Amendment safeguards.[1] "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (citing *Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny.") (other citations omitted)); *see also Walker*, 500 U.S. at 207 ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."). Generally, a government entity has the right to "speak for itself." *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000). When the government chooses to speak, "it is entitled to say what it wishes." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 833 (1995).[2] And when government does so, "it is, in the end, accountable to the electorate and the

---

[1] The majority suggests that even if it were to determine the driver license was purely government speech, "it would still be subject to constitutional analysis under the compelled speech doctrine." As this statement makes clear, the majority's position in this regard is entirely dependent upon its determination that the marking compels Crist's speech. With this, I disagree.

[2] As Justice Alito, writing for the Court, further explained in *Pleasant Grove City*, "This does not mean that there are no restraints on government speech. For example, government speech must comport with the Establishment Clause." 555 U.S. at 468; *see also Van Orden v. Perry*, 545 U.S. 677, 692–98 (2005) (Thomas, J., concurring) (discussing the original meaning of the Establishment Clause).

political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position." *Southworth*, 529 U.S. at 235.

While it is true that the government has the right to speak, it does not have the right to compel Crist to disseminate its message. Here, however, the State has not spoken through Crist. Rather, it speaks through its own, duly issued document—a Florida driver license.

Pertinent here, the First Amendment to the United States Constitution provides, "Congress shall make no law . . . abridging the freedom of speech . . . ." Amend. I, U.S. Const. The United States Supreme Court, in interpreting the First Amendment, has determined that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citations omitted). "The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'" *Id.* (citation omitted). The Supreme Court has further concluded that the "compelled speech doctrine applies to ideological speech and purely factual, non-commercial speech." *McClendon v. Long*, 22 F.4th 1330, 1336 (11th Cir. 2022) (citing *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 797–98 (1988); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018)).

As urged by Crist, the majority essentially relies primarily on two cases in support of his position that the challenged statutes are unconstitutional: *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019), and *State v. Hill*, 341 So. 3d 539 (La. 2020). Those cases conclude that each state's similar laws requiring markings on the driver licenses held by those who have committed sexual crimes impermissibly compelled the offender's speech in violation of the First Amendment. In my view, both cases are devoid of any persuasive force or effect.

Nearly fifty years ago, the United States Supreme Court in *Wooley* declared unconstitutional New Hampshire's punishment of a citizen for covering the State motto "Live Free or Die" on his

license plate affixed to his personal automobile. *Wooley*, 430 U.S. at 717. The Court held it was violative of the First Amendment to "require an individual to participate in the dissemination of an ideological message by *displaying it on his private property* in a manner and for the express purpose that it be *observed and read by the public*." *Id.* at 713 (emphasis added). To allow the state to do so would "in effect require[] that appellees use their private property as a 'mobile billboard' for the State's ideological message or suffer a penalty[.]" *Id.* at 715; *see also McClendon*, 22 F.4th at 1336 (citing *Wooley*). Such action "invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." *Wooley,* 430 U.S. at 715 (quoting *Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)).

The "SEXUAL PREDATOR" marking on Crist's license materially differs from *Wooley* in two important ways. First, the marking is not displayed on Crist's private, personal property. Second, the required marking is not placed on the driver license "for the express purpose that it be *observed and read by the public*" at large. *See Wooley*, 430 U.S. at 713 (emphasis added).

a.

Simply stated, much like a U.S. passport, a Florida driver license remains government property and, when issued by the State and placed in Crist's possession, does not constitute Crist's personally owned private property. *See Doe v. Kerry*, No. 16-cv-0654-PJH, 2016 WL 5339804, at \*17 (N.D. Cal. Sept. 23, 2016) (a U.S. passport "remain[s] government property even when held by individuals" and may constitutionally bear an identifier notifying those who view the passport that the holder is a convicted sex offender). A Florida driver license is "a certificate that, subject to all other requirements of law, authorizes an individual to drive a motor vehicle." § 322.01(17), Fla. Stat. The driver license is issued *only* by the Florida Department of Highway Safety and Motor Vehicles. *See* § 322.14(1)(a), Fla. Stat. And Florida law grants to the department the right to require the surrender of the driver license upon certain occurrences. *See, e.g.*, § 322.059, Fla. Stat. (surrender of license required for delinquent support obligation); § 322.22, Fla. Stat. (authorizing cancelation or

23

withholding of issuance or renewal of license and requiring surrender of canceled license).

The holder of a Florida driver license, such as Crist, possesses no "editorial control" over what information is contained on the license. No Floridian can add a statement to an officially issued license that may express the holder's personal view or opinion.[3] Indeed, the State of Florida *alone* determines what information is displayed on a driver license. Florida law dictates—in considerable detail—what information is set forth on the license, including, *inter alia*: a color photograph or digital image of the licensee; the name of the State; a unique number assigned to the licensee; the licensee's full name, date of birth, and residential address; a description of the licensee, to include his sex and height; and the dates of issuance and expiration of the license. A license is also required to be signed by the licensee and identify the class of vehicle he may operate. *See* § 322.14(1), Fla. Stat.; *see also* § 322.141, Fla. Stat. The holder of the license has no prerogative to request or require the removal of this information beyond that contemplated by Florida law.[4]

---

[3] To permit the holder of a Florida driver license to add to or alter its contents based on the whim or preference of the holder would diminish the license as a means of government-issued identification.

[4] The majority's novel determination that a government-issued Florida driver license is a "speech hybrid" containing both governmental and personal voluntary speech, such as for an organ donor or lifetime fishing or hunting licensee, misses the point. Such information is only permitted on a license for those who qualify for inclusion because the State of Florida directs such information be placed there. The reason for this requirement seems clear: the identification of the licensee as an organ donor, for example, must be able to be officially communicated to proper authorities when needed or required. While one may voluntarily choose to be an organ donor or not, and the state does not make that choice, the inclusion of the information on the license of the organ donor is not personal because it is provided for by the Department, not simply the individual.

Further, the State of Florida exerts considerable control over the physical license itself. Specifically, Florida law provides:

*Every licensee* shall have his or her driver license, which must be *fully legible with no portion of such license faded, altered, mutilated, or defaced*, in his or her immediate possession at all times when operating a motor vehicle and shall present or submit the same upon the demand of a law enforcement officer or an authorized representative of the department.

§ 322.15(1), Fla. Stat. (emphasis added). As such, when the driver license was tendered by the State into Crist's possession, the license retains its character as a government "certificate," *see* § 322.01, Fla. Stat., over which the government maintains ownership and statutory control.

It is that certificate—that license issued by the Florida Department of Highway Safety and Motor Vehicles—that conveys the State's message identifying Crist's *legal status* as a "SEXUAL PREDATOR." Such *legal status* is born from the designation Florida law placed upon him as a result of his conviction for his admitted and horrendous sexual offenses perpetrated against his minor child victim. He did not choose the classification, and one can rightly conclude he would discard the status if allowed. Nonetheless, Florida law requires Crist be designated a sexual predator and that the Department identify Crist as a convicted sexual predator on his state-issued driver license.

As a result, both the substance of the communication—Crist's *legal status* as a sexual predator, which is pertinent to his legal identity—and the means of communication—the driver license issued by the State of Florida to Crist that contains all information required by law—is quintessential government speech. Far different than the forced straw-like hypotheticals presented by the majority involving overtly political commentary (which push to the brink of absurdity), the State's communication of Crist's *legal status* as a dangerous sexual predator is purely governmental speech spoken through a purely governmental medium. And the State is permitted to communicate Crist's *legal*

25

*status* in furtherance of its purpose to protect the community and children in Florida.

That Crist has possession of the driver license, and exercises a degree of concurrent physical control over it, does not render the license "his property." *See Kerry*, 2016 WL 5339804, at \*17 ("Passports remain government property even when held by individuals . . . ."). And because the State's message communicating Crist's status as a sexual predator is not communicated through use of Crist's private property—as was the case in *Wooley* and *McClendon*—the State has not impermissibly compelled Crist's speech.

b.

Additionally, the driver license here is distinguishable from the license plate in *Wooley* because the required marking is not placed on the driver license "for the express purpose that it be *observed and read by the public.*" *See Wooley*, 430 U.S. at 713 (emphasis added). The compelled distribution of the government speech at issue in *Wooley* (a license plate attached to one's vehicle) and *McClendon* (a yard sign placed by a local sheriff's office at the residences of registered sex offenders warning passersby not to trick or treat at the home) involved distribution by displaying the message on one's private property that would be observed and read by all passersby. *See McClendon*, 22 F.4th 1336–38.

Far different than *Wooley* and *McClendon*, the "SEXUAL PREDATOR" marking is not placed on Crist's driver license as a "billboard," *see Wooley*, 430 U.S. at 715, designed to be a message communicated to the public at large and consumed by them. By its very nature, a driver license customarily is held in one's wallet (or the like) along with other items needed for business or personal purposes. Unlike a license plate or sign, it is not displayed to all who pass by or encounter its holder. Rather, it is a means of official identification (and certificate of authority to operate a motor vehicle on public roadways) that is shown when required or requested. Those who may request to view the license may be law enforcement or other governmental agents, as well as private individuals in business settings. Such request is born of

26

situational need. And it is not difficult to envision such need extending beyond Crist encountering law enforcement officers and into business settings, including those environments where children regularly congregate (e.g., playground-type establishments, cruises, places where adults may volunteer to work with children, etc.). Thus, the purpose of the marking is to notify such persons who have reason to view the driver license in seeking to identify an individual and receive other information contained on the license (perhaps including his designation as a sexual predator).

2.

Even if, *arguendo*, the statutorily required "SEXUAL PREDATOR" marking constitutes a form of compelled speech by Crist, as the majority suggests, the statutes requiring the marking and forbidding its alteration or concealment are constitutional.

As the Eleventh Circuit has explained, "[w]hen the government 'compel[s] speakers to utter or distribute speech bearing a particular message,'. . . such a policy imposes a content-based burden on speech and is subject to strict-scrutiny review." *McClendon*, 22 F.4th at 1337–38 (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641–42 (1994)) (other citations omitted). Thus, to be constitutionally permissible, the challenged speech "must be a narrowly tailored means of serving a compelling state interest." *Id.* at 1338 (citing *Pacific Gas & Elec. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 19 (1986)). The SEXUAL PREDATOR marking before us passes constitutional muster.

The inherently compelling state interest in protecting the public and minor children from sexual offenses, *see* § 775.21(3)(c), Fla. Stat., is self-evident and in need of no commentary. This interest is universally—and rightly—regarded as sufficiently compelling for constitutional purposes, including by the courts relied upon by Crist. *See Doe 1*, 367 F. Supp. 3d at 1329; *Hill*, 341 So. 3d at 553; *see also McClendon*, 22 F.4th at 1338.

27

Additionally, the challenged statutes are sufficiently narrowly tailored to serve this compelling state interest.[5] The statutorily required marking on Crist's license does not seek to communicate to the public at large or to disinterested passersby. Rather, the marking is viewed only by those who need or desire to view his license for a given purpose. Those who seek to review Crist's driver license—be they law enforcement authorities or individuals engaged in business or social enterprise—may well need or want to know of Crist's status as a sexual predator. The marking on his license to provide such awareness is narrowly tailored to accommodate this compelling state interest. Any humiliation Crist claims he suffers when required to produce his driver license neither lessens the State's interest nor renders the State's means in this regard insufficiently narrowly tailored.

As a result of his arguments, Crist asks this Court to "at least *change* the requirement of the sexual predator designation on ID cards and driver licenses to those required in the case of sexual offender." The majority seemingly puts its seal of approval on such a change. However, Crist's argument, and the majority's approval thereof, fails for two reasons.

First, the majority's "one-size-fits-all" approach of the use of a statute section number as a means of identifying his status as a sexual predator fails to appreciate the unique and heightened risks posed by such predators. True, sexual offenders are themselves serious threats to the public safety. Sexual predators, however, present an even greater threat to the community given the nature of their offenses and the targeting of vulnerable children. Perhaps the requirements of Florida statutes—that a sexual offender be identified on his driver license by statute section number, *see* § 322.141(3)(b), Fla. Stat., while a sexual predator is to be identified by express wording—were enacted into Florida law to appreciate and address that heightened risk

---

[5] As noted by the Eleventh Circuit in *McClendon*, "'narrowly tailored' does not mean 'perfectly tailored.'" *McClendon*, 22 F.4th at 1338 (citing *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015)). The statutory marking objected to here is constitutional, and the State of Florida has no burden to further tailor the marking to meet Crist's preference.

and give notification consistent therewith (along with the substantial registration and monitoring requirements also applicable).

Further still, the majority presents no colorable basis for its conclusion that its recommended statute numbers (replete with color-coding) pass constitutional muster while the words "SEXUAL PREDATOR" do not. In its effort to assuage the shame purportedly felt by Crist,[6] the effect of the majority's recommendation is to lessen the ability of the public to know of the threat presented by predators in their presence.

Finally, and more importantly, however, Crist's request and the majority's recommendations—on a most fundamental level—misunderstand the prerogative and purpose of the judicial branch of government. This Court simply should refuse to go along, even in the form of left-handed recommendations.

Courts may not, even in a rare instance when a statute is declared unconstitutional, rewrite the law. Such is the sole prerogative of the political branches of government, administered by individuals duly elected by the People. To even entertain a contrary notion is violative of the most foundational aspects of government in our Republic and inconsistent with the text, structure, and history of our governing constitution. *See* Art. II, § 3, Fla. Const. ("The powers of the state government shall be divided into legislative, executive, and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."); *see also generally* Arts. I–III, U.S. Const.

III.

As sections 322.215(5)(c) and 322.141, Florida Statutes, are plainly constitutional and do not violate Crist's right to speech

---

[6] Public sunlight may well cause Crist a sense of shame for the repeated and abhorrent acts of abuse he perpetrated on his victim in the darkness of isolation. So be it. Such a proper feeling in no way renders the statutorily required marking on his license unconstitutional.

secured by the First Amendment, the trial court correctly denied his motion. Therefore, I would affirm.