**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 17, 2026

# In the Court of Appeals of Georgia

A25A2193. KEAIS v. KELLEY.
A26A0122. NEWSOME v. KEAIS.

DAVIS, Judge.

These appeals arise from a tragic fatal vehicular collision involving a vehicle driven by Ralph Dover and Eric Keais, who was riding a bicycle along the same roadway in the same direction as Dover. In Case No. A25A2193, Manfred Keais, as next of kin and as administrator of his son Eric's estate, appeals from the trial court's order granting Othel "Trey" Kelley III's motion to dismiss. Keais argues that the trial court erred in granting the motion to dismiss by (1) holding that the statutory duty to render aid and support under OCGA § 40-6-270 only applied to drivers and cannot be voluntarily undertaken by another; (2) failing to recognize that Kelley voluntarily assumed the driver's statutory duty to render aid; and (3) determining that a voluntary

undertaking requires a personal or financial interest. In Case No. A26A0122, James Newsome appeals from the trial court's order denying his motion to dismiss. Newsome argues that the trial court erred by (1) determining that Keais' renewal action was not barred by the statute of limitations because the plaintiffs in the renewal action and the original action are not the same; and (2) determining that Keais in his individual capacity, was timely added as a plaintiff to the action. For the reasons that follow, in Case No. A25A2193, we affirm the trial court's order granting Kelley's motion to dismiss, and in Case No. A26A0122, we affirm the trial court's order in part and reverse it in part.

"We review de novo the trial court's order granting a motion to dismiss for failure to state a claim. We take the allegations in the complaint as true and resolve all doubts in favor of the plaintiff." *Norris v. Atlanta Braves, Inc.*, 376 Ga. App. 663, 663–64 (920 SE2d 717) (2025).

The factual allegations of Keais' renewal complaint and the exhibit attached and incorporated thereto show the following.[1] On September 11, 2019, Ralph Dover

---

[1] We note that a trial court "may consider exhibits attached to and incorporated into the pleadings when ruling upon a motion to dismiss." *Dial v. Burge*, 372 Ga. App. 682, 683 (905 SE2d 872) (2024).

attended a county fair and then drove to Cedartown, Georgia, in his vehicle. Dover drove along North Main Street, and at the same time, Eric rode his bicycle on North Main Street in the same direction as Dover. Dover's vehicle struck Eric from behind, which caused him to be thrown onto the hood and windshield of Dover's vehicle. Dover's vehicle sustained extensive damage from the impact, including a shattered windshield and a caved-in hood and fender. Dover, however, did not stop his vehicle, call 911, or look for Eric. Instead, he called Kelley, an attorney and member of the Georgia House of Representatives, and asked Kelley to meet him at a gas station.[2] After Kelley arrived at the gas station, Dover took him to the area of the collision where Kelley observed a bicycle on the side of the road. Kelley did not call 911 but instead called a senior partner at his law firm.

Kelley also called Newsome, who was the Chief of the Cedartown Police Department. Kelley told Newsome that Dover hit "something" with his car and that he observed a bicycle in a ditch. According to Keais, the Cedartown Police Department's standard operating procedures require officers to notify dispatch when alerted about a seriously injured person. Newsome, however, did not notify dispatch

---

[2] Kelley was also the Municipal Court Solicitor for the City of Cedartown.

and instead called Officer Joshua Turner of the Cedartown Police Department and told him that he feared "that a person had been hit," and he told Officer Turner to meet Kelley at the scene where the bicycle was found.

Officer Turner went to the scene and met with Kelley and Dover, and Dover told him that he hit "a deer" or "possibly a person." Officer Turner noted the damage to Dover's vehicle and then searched the roadway. Officer Turner located a red mountain bicycle, and approximately 20 feet from the bicycle, he observed Eric down an embankment in a ditch laying on his back with severe injuries. Officer Turner called for fire rescue and EMS, but Eric ultimately succumbed to his injuries later that evening, and his death was ruled a vehicular homicide. Dover was later convicted of leaving the scene of an accident resulting in death (OCGA § 40-6-270(b)) and was sentenced to five years' imprisonment.

On September 13, 2021, Keais filed a complaint "individually and as the natural parent and as administrator of the estate of Eric Christopher Keais" against Dover, Kelley in his individual and official capacities,[3] Newsome in his individual and official capacities, the Cedartown Police Department, and the City of Cedartown in the

---

[3] The suit against Kelley in his official capacity was based on his status as a member of the Georgia House of Representatives.

United States District Court for the Northern District of Georgia. Keais subsequently filed an amended complaint "individually and as administrator of the estate of Eric Christopher Keais," and filed a second amended complaint on June 22, 2022, "as administrator of the estate of Eric Christopher Keais," and asserted claims for wrongful death against all defendants, negligent infliction of emotional distress against Dover, intentional infliction of emotional distress against Kelley and Newsome, negligent hiring, training, and retention against the City of Cedartown, and violations of civil rights against the City of Cedartown, Kelley, and Newsome.[4] The district court later entered an order dismissing the action on October 25, 2022. The case caption of the district court's dismissal order listed the case caption as "MANFRED KEAIS, Individually and as the Natural Parent and as Administrator of Estate of Eric Christopher Keais, Deceased."

Keais, "as next of kin and as administrator of Eric's estate," filed the instant renewal complaint against Dover, Kelley in his individual capacity, and Newsome in his individual capacity on April 25, 2023, in the Superior Court of Polk County, asserting claims for wrongful death and attorney fees against all defendants, and

---

[4] Keais also sought damages for violations of Eric's civil rights, punitive damages, and attorney fees.

punitive damages against Dover and Newsome. Kelley and Newsome answered the complaint, and they filed separate motions to dismiss. Kelley argued that Keais' complaint was due to be dismissed because he owed no duty to rescue or render aid to Eric.[5] In response, Keais argued that dismissal of his complaint was improper because Kelley owed a duty to render aid under the voluntary undertaking doctrine. In Newsome's motion, he argued that dismissal of the complaint was warranted because Keais initiated the original suit in the district court as "administrator of the estate of Eric Keais" but filed the renewal complaint as "next of kin and as administrator of the estate of Eric Keais," and thus the action was not limited to the same parties as the original suit. He also argued that Keais lacked standing to file a wrongful death claim as the administrator of Eric's estate. Keais responded that dismissal was improper because case captions are not a part of the petition and that Georgia is a notice pleading jurisdiction that only requires parties to give a general nature of the claims.

---

[5] He also argued that because the wrongful death claim should be dismissed, Keais' derivative claim for attorney fees under OCGA § 13-6-11 should also be dismissed.

After hearings, the trial court granted Kelley's motion to dismiss,[6] determining that Kelley had no duty to render aid to Eric and that OCGA § 40-6-270 only required the driver of the vehicle to render aid. But the trial court denied Newsome's motion to dismiss, determining that the action involved substantially the same parties and the same claims. We granted Newsome's application for an interlocutory appeal, and Keais filed his notice of appeal from the grant of Kelley's motion to dismiss.

*Case No. A25A2193*

1. As a preliminary matter, although not raised by either party, we address our jurisdiction over Keais' appeal. See *Clay v. Douglasville-Douglas County Water & Sewer Auth.*, 357 Ga. App. 434, 436(1) (848 SE2d 733) (2020) ("[I]t is our duty to inquire into our jurisdiction in any case in which there may be a doubt about the existence of such jurisdiction."). We begin our analysis by noting that "[t]he Appellate Practice Act begins with the command that this article shall be liberally construed so as to bring about a decision on the merits of every case appealed. In so prescribing, we have held, the Act disfavors multiple appeals and piecemeal litigation." *Sewell v. Cancel*, 295 Ga. Ga. 235, 237 (759 SE2d 485) (2014) (citation modified).

---

[6] The transcript of the hearings on the motions to dismiss are not included in the records on appeal.

"As a general rule, a direct appeal requires that the judgment or order appealed be final, which means the case is no longer pending in the court below." *Harmon v. Progressive Premier Ins. Co. of Illinois*, 364 Ga. App. 809, 810 (874 SE2d 163) (2022).

> In a case involving multiple parties or multiple claims, a decision adjudicating fewer than all the claims or the rights and liabilities of less than all the parties is not a final judgment. In such circumstances, there must be an express determination under OCGA § 9–11–54(b)[7] or there must be compliance with the interlocutory appeal requirements of OCGA § 5–6–34(b). Where neither of these code sections are followed, the appeal is premature and must be dismissed.

*Shoenthal v. Shoenthal*, 333 Ga. App. 729, 730 (776 SE2d 663) (2015). In this case, Keais named Dover, Newsome, and Kelley as defendants, and although the trial court dismissed Keais' claims against Kelley, Keais' claims against Dover and Newsome remained pending. Thus, because Keais' claims remained pending, Keais did not follow the interlocutory appeal procedures, and the trial court did not direct the entry of final judgment in accordance with OCGA § 9-11-54(b), the order granting Kelley's

---

[7] This statute states in part that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." OCGA § 9-11-54(b).

motion to dismiss was not a final order for purposes of a direct appeal. See *Shoenthal*, 333 Ga. App. at 730 (dismissing appeal for lack of jurisdiction because the trial court's order was not final under OCGA § 5-6-34 where claims remained pending in the trial court, the plaintiffs did not follow the interlocutory procedures, and the trial court did not direct entry of a final judgment under OCGA § 9-11-54(b)).

But it is a well settled principle that "pleadings, motions, and orders are to be construed according to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner compatible with the best interest of justice." *Corken v. Maynard*, 374 Ga. App. 777, 780(1)(a) n.3 (913 SE2d 876) (2025). To that end, OCGA § 5-6-38 provides in part that "[i]n civil cases, the appellee may institute [a] cross appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant; and the appellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him." OCGA § 5-6-38(a). In construing OCGA § 5-6-38, we have held that a party is "entitled to file a cross appeal ... seeking review of an interlocutory matter so long as the main appeal is properly before us," and where we have granted an application for an interlocutory appeal, jurisdiction was proper over a cross appeal.

*Ga. Dep't of Transp. v. Strickland*, 279 Ga. App. 753, 755–56(3) (632 SE2d 416) (2006). In this same vein, both this Court and the Supreme Court of Georgia have deemed appeals from non-final orders "appealable as a matter of right if it is classifiable as a cross appeal to an appealable order." *McClure v. Gower*, 259 Ga. 678, 680–81(2) (385 SE2d 271) (1989) (construing a non-final order as a cross appeal where the appeal was taken from the main appeal that was properly before the Court); *Buschel v. Kysor/Warren*, 213 Ga. App. 91, 93(3) (444 SE2d 105) (1994) (denying motion to dismiss cross appeal for failure to follow the discretionary appeal procedures because the order was appealable as a matter of right under OCGA § 5-6-38 because the main appeal was properly before the Court).

Here, we granted Newsome's application for interlocutory review of the trial court's order denying his motion to dismiss on July 21, 2025, and Newsome timely filed his notice of appeal on July 25, 2025. Although Keais filed his notice of appeal on July 3, 2025, which was before Newsome filed his notice of appeal, Keais' notice of appeal ripened once Newsome filed his notice of appeal. See *Wellman v. JP Morgan Chase Bank, N. A.*, 347 Ga. App. 118, 118 n.1 (817 SE2d 567) (2018) (determining that jurisdiction was proper to review order granting motion to dismiss even though the

appellant filed his notice of appeal before the trial court entered its order because the notice of appeal "ripened" when the trial court's order was entered). And because Newsome's interlocutory appeal is properly before this Court, Keais' appeal from the order granting Kelley's motion to dismiss is properly before us as a cross appeal. See *Think Dev. Sys., Inc. v. Cloudious, LLC*, 369 Ga. App. 58, 59 n.1 (891 SE2d 426) (2023) (rejecting the claim that we lacked jurisdiction over the trial court's orders denying a motion to strike and a motion for summary judgment because the orders were reviewable as a cross appeal since the main appeal was properly before the Court). Accordingly, we have jurisdiction over Keais' appeal.

2. Turning to the merits of Keais' cross appeal, in three related claims of error, he argues that the trial court erred by granting Kelley's motion to dismiss because the statutory duties to render aid under OCGA § 40-6-270 are not limited to drivers of motor vehicles, Kelley was not required to have a personal or financial interest to be liable on his wrongful death claim, and Kelley voluntarily assumed Dover's duties to render aid and report the collision. After careful consideration of the relevant law, we disagree.

> The well-established test that must be satisfied before a motion to dismiss can be granted is a demanding one: A motion to dismiss for

failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Norris*, 376 Ga. App. at 665.

(a) *Wrongful Death.* Wrongful death actions are governed by Georgia's Wrongful Death Act ("the Act"), OCGA § 51-4-1 et seq. OCGA § 51-4-4 generally allows a parent to recover for the homicide of a child.[8] The term "homicide" "includes all cases in which the death of a human being results from a crime, from criminal or other negligence, or from property which has been defectively manufactured, whether or not as the result of negligence." OCGA § 51-4-1(2). Here, Keais argues that Kelley is liable on his wrongful death claim because Kelley voluntarily assumed Dover's obligations to render aid under OCGA § 40-6-270 and failed to do so. To analyze whether Kelley falls within the ambit of OCGA § 40-6-270,

---

[8] See also OCGA § 19-7-1(c)(2) (generally permitting a parent to recover for the death of a child).

we begin by first noting the general principles applicable to issues involving statutory construction:

> In considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. And when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

*Catoosa County v. Rome News Media*, 349 Ga. App. 123, 126–27 (825 SE2d 507) (2019) (citation modified).

> Turning to the statute, OCGA § 40-6-270 states in part that

> *[t]he driver* of any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident and shall: … [r]ender to any person injured in such accident reasonable assistance, including the transporting, or the making of arrangements for the transporting, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such

13

transporting is requested by the injured person; and [w]here a person injured in such accident is unconscious, appears deceased, or is otherwise unable to communicate, make every reasonable effort to ensure that emergency medical services and local law enforcement are contacted for the purpose of reporting the accident and making a request for assistance.

OCGA § 40-6-270(a)(3), (4) (emphasis supplied). The term "driver" as used in the statute "means every person who drives or is in actual physical control of a vehicle." OCGA § 40-1-1(14). And in construing OCGA § 40-6-270, we have held that the obligations contained in the statute apply solely to the "driver" of the vehicle at the time of an accident. See, e.g., *Johnson v. State*, 360 Ga. App. 63, 65(1) (860 SE2d 626) (2021) (stating that a violation of OCGA § 40-6-270(a) requires a showing that "the driver of a vehicle involved in an accident ... knowingly failed to stop at the scene[.]") (citation modified); *Purvis v Steve*, 284 Ga. App. 116, 119–20(2) (643 SE2d 380) (2007) ("OCGA § 40-6-270 ... requires that the driver of a vehicle involved in an accident resulting in injury shall, among other things, stop and render to any person injured in such accident reasonable assistance, including the transporting, or the making of arrangements for the transporting, of such person to a physician, surgeon, or hospital for medical or surgical treatment.") (citation modified); *Loudermilk Enter.,*

14

*Inc. v. Hurtig*, 214 Ga. App. 746, 749 (449 SE2d 1410 (1994) (physical precedent only) (concluding the driver's employer could not be held liable for violating OCGA § 40-6-270 because the requirements of the statute imposed a duty solely on the driver).

Here, the complaint shows, and the parties agree, that Kelley did not drive or have actual physical control of the vehicle at the time it struck Eric. Consequently, Kelley does not fall within the ambit of the statute because the requirements of the statute apply only to the driver, i.e., the person who drove the vehicle or had actual physical control of the vehicle at the time of an accident. And critically, there is no language in the statute stating that parties other than the driver are required to comply with the terms of the statute. *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 316 Ga. 701, 713(2) (888 SE2d 553) (2023) ("[W]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden."). To adopt Keais' broad interpretation of OCGA § 40-6-270(a) would require us to ignore the legislature's explicit use and definition of the term "driver," and presume that the legislature intended for parties other than the driver to abide by the requirements of the statute, which we cannot do. See *Five Star Athlete Mgmt., Inc. v. Davis*, 355 Ga. App. 774, 780(2) (845 SE2d 754) (2020) (rejecting the appellee's interpretation of a

statute which broadened the definition of a statutory term because adopting the appellee's interpretation would have required us to ignore the express language of the statute). See also *Hill v. Kemp*, 366 Ga. App. 19, 25(1) (880 SE2d 590) (2022) ("Under our system of separation of powers this Court does not have the authority to rewrite statutes. The separation of powers prohibits us from adding a line to a law enacted by the legislature.") (citation modified).[9]

Moreover, to the extent that Keais argues that Kelley is liable under an agency theory because he "assumed" Dover's duty to call 911 and report the accident by acting as his agent, advisor, or confidant, that is a misstatement of agency law. "A duty is not imposed upon the agent by virtue of his relation with the principal, but is imposed upon him by law as a responsible individual in common with other members of society." *Williams v. Kasulka Props., LP*, 370 Ga. App. 653, 659(3) (898 SE2d 843) (2024) (citation modified). Indeed, "it is generally recognized that an agent is not liable to third persons for the failure of *the principal* to discharge affirmative duties

---

[9] We also reject Keais' claim that the failure to adopt his interpretation of OCGA § 40-6-270 impermissibly preempts common law. "[T]he long-established general rule is that a person is under no duty to rescue another from a situation of peril which the former has not caused." *Dutt v. Mannar & Co., LLC*, 354 Ga. App. 565, 566(2) (841 SE2d 132) (2020) (quotation marks omitted).

which *the principal* may owe." *Verddier v. Neal Blun Co.*, 128 Ga. App. 321, 322–23 (196 SE2d 469) (1973) (emphasis supplied). As stated above, the duty to call 911 belonged to Dover, the alleged principal, and Kelley as an alleged agent is therefore not liable for Dover's failure to fulfill this duty.

Nevertheless, Keais argues that public policy considerations require reversal of the trial court's dismissal order. Specifically, relying on the Supreme Court of Georgia's decision in *Fortner v. Town of Register*, 278 Ga. 625 (604 SE2d 175) (2004), he argues that OCGA § 40-6-270 was enacted to promote public safety and thus should be broadly construed. OCGA § 40-6-270, however, was not at issue in *Fortner*. Moreover, although the *Fortner* Court stated that "legislation intended to promote the public safety should receive a reasonable and practical interpretation to that end[,]" *Fortner*, 278 Ga. at 527(2), there is no language in *Fortner* that would support the argument that appellate courts should interpret and construe statutes in a manner that is inconsistent and unsupported by the express language and terms of a statute. To the contrary, our Supreme Court has unequivocally stated that "if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Deal v. Coleman*, 294 Ga. 170, 173(1)(a) (751 SE2d

337) (2013) (quotation marks omitted). Our duty as an appellate court is "to interpret the laws as they are written. We leave political questions to the political branches, and the policy arguments in this case are properly directed to the General Assembly." Id. at 174(1)(a) n.11 (quotation marks omitted).

Furthermore, to the extent that Keais argues that dismissal of his claims against Kelley was improper based on the voluntary undertaking doctrine, this claim also fails.

> Under this principle, one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. When one undertakes an act that he has no duty to perform and another person reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care.

*Norman v. Buccina*, 374 Ga. App. 772, 775 (913 SE2d 865) (2025). "[A]n injured person seeking to impose liability upon another for the negligent performance of a voluntary undertaking must show either detrimental reliance or an increased risk of

harm." Id. (citation modified). But we have cautioned that the voluntary undertaking doctrine

> applies only to the extent that the alleged negligence of the defendant exposes the injured person to a greater risk of harm than had existed previously. Accordingly, this principle applies when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed. Liability does not attach for failing to decrease the risk of harm. *Put another way, the mere failure to abate a hazardous condition — without making it worse — does not trigger the application of the voluntary undertaking doctrine.*

Id. at 776 (emphasis supplied).

Here, Keais' wrongful death claim against Kelley is based on Kelley's failure to render aid and contact emergency services after the accident. Keais' complaint alleged that Kelley "assumed control of Dover's conduct" by advising Dover, and that by assuming control of Dover's conduct, he had a duty to exercise reasonable care to prevent further harm to Eric. Keais further alleged Kelley's report of the incident through informal means "created an unreasonable risk of harm to Eric[,]" and "delayed life-saving medical treatments to Eric" and "contributed to his bodily injuries."

19

We conclude that the trial court did not err by determining that Keais' wrongful death claim failed as a matter of law because the voluntary undertaking doctrine did not apply. As shown above, Keais' complaint alleges that Kelley's failure to report the accident after speaking with Dover delayed emergency personnel from responding to the scene which subjected Eric to an unreasonable risk of harm. But the allegations of the complaint disclose with certainty that the voluntary undertaking doctrine does not apply because it was Officer Turner, not Kelley, who found Eric laying in a ditch down an embankment and gravely injured, and thus Keais cannot introduce any evidence within the framework of his complaint to show that Eric reasonably relied on Kelley to perform any duties. See *Norman*, 374 Ga. App. at 775 (plaintiff's parents could not establish detrimental reliance in wrongful death action involving their daughter where the daughter became unconscious before the defendant tried to wake her up). Thus, within the framework of the complaint, there is simply nothing to show that Kelley made any affirmative acts to help Eric.

Furthermore, Keais cannot introduce any evidence to show that Kelley's failure to act resulted in an increased risk of harm to Eric. The failure to act is an act of nonfeasance, "and [Kelley] was under no statutory or common law obligation to

20

perform the act of calling 911. [Thus,] [a]s a matter of law, [Keais] cannot establish any breach of duty in regard to the alleged nonfeasance." Id. at 776–77.[10] See also *Dutt v. Mannar and Co., LLC*, 354 Ga. App. 565, 567(2) (841 SE2d 132) (2020) (voluntary undertaking doctrine did not apply to plaintiff's claim against a personal trainer based on the trainer's failure to call 911 because the failure to act in the absence of a statutory or common law duty to act was mere nonfeasance which could not, as a matter of law, trigger the voluntary undertaking doctrine).[11] We do not reach our conclusion in this matter lightly given the facts of this case. But embedded deep within our Court's nature and structure is the fundamental principle that we are a "court[] for the correction of errors of law committed in the trial court." *Wakefield v. Kiser*, 371

---

[10] We reject Keais' argument that the trial court determined that the voluntary undertaking doctrine did not apply because the doctrine requires a showing that the party doing the undertaking must have a personal or financial interest in the undertaking. In context, it is clear that the court merely distinguished the cases relied upon by Keais which involved parties who had a financial or personal interest in the voluntary undertaking. But even if the trial court did conclude that the voluntary undertaking doctrine did not apply on this basis, "[t]his Court may affirm a trial court's grant of a motion to dismiss if it is right for any reason, so long as the argument was fairly presented to the court below." *Alred v. Ga. Pub. Defender Council*, 362 Ga. App. 465, 471 n.13 (869 SE2d 99) (2022).

[11] And again, to the extent that Keais argues that Kelley acted as Dover's agent, "an agent is ordinarily not liable [to third parties] for mere nonfeasance." *Greene v. Piedmont Janitorial Servs., Inc.*, 220 Ga. App. 743, 744(2) (470 SE2d 270) (1996).

Ga. App. 113, 114(1) (899 SE2d 757) (2024). And for all of the reasons stated above, we conclude that the trial court did not err by granting the motion to dismiss.

(b) *Attorney Fees*. "A prerequisite to any award of attorney fees under OCGA § 13-6-11 is the award of damages or other relief on the underlying claim." *N. Walhalla Prop., LLC v. Kennestone Gates Condo. Ass'n, LLC*, 358 Ga. App. 272, 276(4) (855 SE2d 35) (2021). Because Keais' underlying wrongful death claim fails, Keais' derivative claim for attorney fees under OCGA § 13-6-11 also fails. See id. at 276–77 (plaintiff's claim for attorney fees under OCGA § 13-6-11 failed where the underlying claims failed).[12]

## Case No. A26A0122

3. In this appeal, Newsome argues that the trial court erred by denying his motion to dismiss. Specifically, he argues that the plaintiffs in the original suit are not the same as in the renewal action, Keais as next of kin is an untimely added party to the renewal action, and the entire complaint against him should be dismissed. We conclude that the parties in the renewal action are the same as in the original action,

---

[12] We note that Kelley has filed a motion for attorney fees and expenses pursuant to Court of Appeals rule 7(e)(2). Upon consideration of Kelley's motion, the motion is hereby denied.

but Keais should have been dismissed from the action in his capacity as the administrator of Eric's estate.

(a) *Renewal.* Georgia's renewal statute, OCGA § 9-2-61(a), states in part:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41[.]

To rely on the renewal statute to recommence a suit that is otherwise barred by the statute of limitation,

> the renewal petition must show affirmatively that the former petition was not a void suit, that it is such a valid suit as may be renewed under OCGA § 9-2-61, that it is based upon substantially the same cause of action, and that it is not a renewal of a previous action which was dismissed on its merits so that the dismissal would act as a bar to the rebringing of the petition.

*Strickland v. Geico Gen. Ins. Co.*, 358 Ga. App. 158, 159 (854 SE2d 348) (2021). In construing OCGA § 9-2-61, we have been clear that "[a] properly filed renewal action stands on the same footing as the original action with respect to statutes of limitation.

23

Accordingly, if a renewal action is properly filed within six months after dismissal of the original action, it remains viable even though the statute of limitation may have expired." *Coen v. Aptean, Inc.*, 356 Ga. App. 468, 470(1) (847 SE2d 835) (2020). But if the statute of limitation has expired, "[t]he new petition must be substantially the same as the original as to the essential parties." *Aaron v. Jekyll Island–State Park Auth.*, 348 Ga. App. 332, 333 (822 SE2d 829) (2019). In determining whether the parties are substantially the same in the renewal action as in the original action, we have looked to the case captions of the pleadings to assist in our analysis. See, e.g., *Cummings v. First Transit, Inc.*, 376 Ga. App. 440, 442–43 (919 SE2d 483) (2025) (examining the case captions and civil action numbers in determining that the renewal action was a valid action); *Strickland*, 358 Ga. App. at 159 (same).

Here, Keais filed the original wrongful death action in district court "individually and as the natural parent and as administrator of the estate of Eric Christopher Keais." The case caption for Keais' second amended complaint in the district court, which was filed after the statute of limitation expired,[13] listed Keais

---

[13] As stated above, the accident occurred on September 11, 2019, and thus the statute of limitation would have originally expired on September 11, 2021. See *Toomer v. Metro Ambulance Svcs., Inc.*, 364 Ga. App. 469, 474(2) (875 SE2d 479) (2022) (stating that the two-year statute of limitation for personal injury claims applies to

solely as the "administrator" of Eric's estate. In dismissing the action, however, the case caption for the district court's order listed the case as "MANFRED KEAIS, Individually and as the natural parent and as administrator" of Eric's estate, and Keais filed the renewal complaint in the superior court as "next of kin and administrator" of Eric's estate.

In light of this record, we conclude that the plaintiffs in the renewal action are the same as the plaintiffs in the original action. As shown above, Keais originally filed the action in his individual and representative capacities, and the case caption in the district court's dismissal order listed Keais as the plaintiff in both his individual and representative capacities of Eric's estate. While it is true, as Newsome points out, that the case caption for Keais' second amended complaint only listed Keais in his capacity as administrator, Newsome does not point to anything in the record, and we have not uncovered anything in the record, that shows that Keais was dropped or dismissed

---

wrongful death claims). But because "the clock" for the statute of limitation began to run on September 11, 2019, which was before our Supreme Court issued its orders suspending the statute of limitations between March 14, 2020, and July 14, 2020, due to the COVID-19 pandemic, Keais was entitled to an additional 122 days to file his action. *Leggat v. Navicent Health, Inc.*, 369 Ga. App. 731, 735–36(1) (893 SE2d 438) (2023).

from the district court action in his individual capacity,[14] especially since the district court's dismissal order still listed Keais as the plaintiff "[i]ndividually and as the natural parent and as administrator" of Eric's estate. Therefore, the trial court did not err by denying Newsome's motion to dismiss on this basis. See *Cummings*, 376 Ga. App. 440 (concluding that the plaintiff filed a valid renewal action where the case captions of the original action and the renewal action showed that the suit involved the same parties).

(b) *Standing*. We agree with Newsome, however, that the trial court should have dismissed Keais in his capacity as administrator from the action. "Because there is no common right to file a claim for wrongful death, the Act is in derogation of common law, and its scope must be limited in strict accordance with the statutory language used therein." *Ne. Ga. Med. Ctr., Inc. v. Metcalf*, 363 Ga. App. 676, 677(1)

---

[14] Although Newsome points to Keais' motion to file second amended complaint in the district court action which lists Keais solely in his capacity as administrator, we note that there is nothing in Keais' motion where he requested permission to amend his complaint based on a change in party status. Instead, the record shows that Keais desired to amend his complaint because (1) he learned of possible new information that Kelley was, in fact, in the vehicle at the time of the accident; (2) Kelley was not performing official duties as alleged in his previous complaint; and (3) other factual assertions that were made in his previous complaint needed to be revised.

(871 SE2d 4540 (2022) (quotation marks omitted), overruled on other grounds by *Hamon v. Connell*, 315 Ga. 760, 766(2) n.11 (883 SE2d 785) (2023). And we have emphasized that we "cannot create a judicial exception to the statute establishing who may bring a wrongful death action." *Garner v. Acadia Healthcare Co., Inc.*, 370 Ga. App. 146, 149(2) (894 SE2d 204) (2023).

For standing of an administrator or executor of an estate to bring a wrongful death claim, OCGA § 51-4-5(a) states in part: "*When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4*, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin." (Emphasis supplied). Under OCGA § 51-4-2(a), "[t]he surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the full value of the life of the decedent[.]" As stated above in division 2(a), a parent's right to recover for the death of their child is authorized by OCGA § 51-4-4, which states, "[t]he right to recover for the homicide of a child shall be as provided in Code Section 19-7-1 and Code Section 53-1-5."[15] Pertinently, OCGA

---

[15] OCGA § 53-1-5 concerns issues of forfeiture of rights for individuals who kill, conspire to kill, or procure someone's death.

§ 19-7-1(c)(2) provides in part: "*If the deceased child does not leave a spouse or child*, the right of recovery shall be in the parent or parents[.]" (Emphasis supplied). Thus, in construing these statutes, we have stated that the order for standing to bring a wrongful death claim is as follows:

> The surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the [death] of the spouse or parent the full value of the life of the decedent, as shown by the evidence. Where a decedent has no surviving spouse or child, a surviving parent may bring suit. And when there is no person entitled to bring an action for the wrongful death of a decedent, the administrator or executor of the decedent's estate may bring the claim. In a typical case, therefore, a spouse has exclusive standing to bring a claim for the wrongful death of the decedent; if the decedent is unmarried, the decedent's children may recover, followed by the decedent's parents and (if the decedent has no surviving spouse, children, or parents) his or her estate.

*Seay v. Valdosta Kidney Clinic, LLC*, 353 Ga. App. 378, 379(1) (837 SE2d 529) (2020).

Applying the aforementioned principles, the trial court erred by denying Newsome's motion to dismiss as it pertained to Keais in his capacity as administrator of Eric's estate. As stated above, Keais filed the renewal complaint "as next of kin and as administrator of Eric's estate." In the complaint, Keais stated that he was Eric's

father and the executor of his estate, and asserted that at the time of Eric's death, "Eric was unmarried and had no children." Thus, Keais, in his individual capacity as Eric's father was entitled to bring a wrongful death action under OCGA § 51-4-4. And because Keais was entitled to bring a wrongful death action in his individual capacity, he could not also bring suit in his capacity as the administrator of Eric's estate. See *Auto Doors, Inc. of Ga. v. Zivoluba*, 277 Ga. App. 288, 289 (626 SE2d 256) (2006) (parent lacked standing to bring wrongful death action as administrator of son's estate because they could have brought the action in their individual capacity under OCGA § 51-4-4). Therefore, the trial court erred by denying Newsome's motion to dismiss Keais in his capacity as the administrator of Eric's estate.

Accordingly, for the foregoing reasons, in Case No. A25A2193, we affirm the trial court's order granting Kelley's motion to dismiss. In Case No. A26A0122, we affirm the portion of the trial court's order denying Newsome's motion to dismiss Keais in his capacity as next of kin, but we reverse the portion of the order denying the motion to dismiss Keais in his capacity as administrator of Eric's estate.

*Judgment affirmed in Case No. A25A2193. Judgment affirmed in part and reversed in part in Case No. A26A0122. Rickman, P. J., and Gobeil, J., concur.*